## Richmond.

### ROSENBAUM V. GOODMAN AND ALS.

#### December 6th, 1883.

1. SUBROGATION—*When applicable.*—This principle applies on payment of debt or duty by one secondarily liable, and gives him right to enforce the debt against all whose liability, as compared with his own, is primary.

2. CONTRIBUTION—*When applicable.*—As subrogation is the means of procuring for the surety indemnity from the principal; so contribution founded on the same principle, equalizes co-sureties, by obliging such as have paid nothing, or less than their shares, to indemnify such as have paid more.

3. CO-SURETIES—*Who are.*—Those bound for the same thing, though by different instruments, at different times and without one another's knowledge, are co-sureties. Not so where the obligations are for wholly distinct things, though arisen from same principal indebtedness.

4. SUBROGATION—*Contribution—Co-sureties—Case at bar.*—Just before E was adjudicated a bankrupt he sold L a lot of goods. The marshal seized them on claim that the sale was fraudulent. L replevied them, giving bond, with R as his surety, conditioned for their delivery on the decree of the district court. That court decreed that the sale was fraudulent and void, and that L deliver up the goods. L appealed to the circuit court with new sureties on his appeal bond. The circuit court affirmed the decree. With new sureties on his second appeal bond, L then appealed to the supreme court, which also affirmed the decree. By this time L had squandered the goods, become insolvent and died. R was compelled to pay their value to the bankrupt's assignee; and having paid it, filed his bill for indemity against the sureties of L on his appeal bonds. Court below dismissed the bill. On appeal—

HELD (*Fauntleroy, J., dissenting*):

    1. The bill was properly dismissed.

    2. The sureties of L on his appeal bonds were not primarily bound as compared with R.

VOL. LXXVIII—16

3. Those sureties were not co-sureties of R, being bound for wholly distinct things ; R being bound for the delivery of the goods on the decree of the court ; the sureties on L's appeal bonds being bound only for the damages and costs resulting from L's failure to prosecute his appeals to the reversal of the decrees appealed from.

Appeal from decree of chancery court of city of Richmond, entered in the cause of *M. Rosenbaum* against *A. B. Goodman and als.*  The object of the suit was to compel the defendants to indemnify the plaintiff for the loss of $7,600, paid by him as surety of Samuel Lisberger, under a decree of the district court of the United States at Richmond, in the cause of *Storrs Bros. and others* against *Engle & Son*, in bankruptcy, on the ground that said defendants, Goodman and others, were, as compared with Rosenbaum, plaintiff, primarily bound therefor.  The chancery court dismissed the bill with costs.  Rosenbaum obtained an appeal to this court.

Opinion states the case.

*Edward Y. Cannon, Meredith & Cocke* and *Jos. Chrisitan*, for the appellant.

*W. W. Henry, J. A. Jones, Cannon & Courtney, Robert Stiles, John Howard*, for the appellees.

LACY, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Richmond, entered on the 19th day of April, 1881.

The facts necessary to be stated are as follows : On the 17th day of June, 1870, Storrs Bros. and Blair & Thaxton, claiming to be the creditors of Engle & Son, merchants doing business in the city of Richmond, filed their petition in the district court of the United States, alleging the commission of sundry acts of bankruptcy, and praying

that said firm of Engle & Son be adjudicated bankrupts; that the principal assets of the firm consisted of a stock of goods, which had been sold to one Lisberger; that the sale was a fraud on the bankrupt acts, null and void; that an injunction be issued to restrain said Lisberger from disposing of the goods, and that a warrant of seizure be issued to the marshal. The restraining order and the order of seizure were issued and executed on the same day. Upon the next day, on the petition of Lisberger, it was ordered that the goods be restored to him upon his executing a bond with security in the penalty of $8,000, conditioned for the forthcoming of the goods or the value thereof, upon the future order of the court. The bond thus required of Lisberger was given, and the goods restored to him by the marshal; his sureties in said bond were M. Rosenbaum, the appellant here, and Waggoner & Harvey.

Afterwards, on the 12th April, 1871, the assignee of Engle & Son, in the bankruptcy proceedings mentioned above, filed his petition, setting forth that the said Engle & Son had been adjudged bankrupts; that their estate had been assigned to him; that their schedule exhibited no assets whatever, except some exempt property, and charging that their assignment or sale to Lisberger, was void under the bankrupt act; that the marshal had seized the goods of Engle & Son in the hands of Lisberger; that they had been released upon the execution by Lisberger of the above-mentioned forthcoming bond, and asked that Lisberger be ordered to deliver up the goods, or pay the value thereof, and in default of such payment by Lisberger, that he and his sureties on the forthcoming bond be required to pay the amount therein promised, &c. The suit progressed with somewhat varying fortune, until on the 10th of May, 1876, a final decree was entered in the suit. When the court decided that the sale of the goods to Lisberger by Engle &

Son was fraudulent as to the creditors of Engle & Son; decreed that Lisberger should pay to the said assignee of Engle & Son the sum of $5,618.12, with interest from the 16th May, 1870, which was the estimated value of the goods.

From this decree an appeal was taken to the circuit court of the United States by Lisberger. The circuit court sustained the decree of the district court so far as it held the said Lisberger liable to pay the said sum of $5,618.12, with interest, being the estimated value of said goods; and held that Rosenbaum was a proper party, and remanded the cause.

The sureties, who united in this appeal, on the appeal bond, were Herman Wallerstein, M. Hessberg, Marcus Harris, and Nathan Goodman. From this decree an appeal was taken by Lisberger to the supreme court of the United States, and he executed an appeal bond, with Jos. S. Gerst, A. B. Goodman, and Herman Wallerstein sureties.

Rosenbaum, it may be observed, did not assume any responsibility under either of these appeal bonds The supreme court of the United States dismissed this appeal for failure to prosecute it, thus affirming the decree of the circuit court.

After these proceedings were ended, the said assignee of Engle & Son filed a petition setting forth that by execution he had made $950 out of Lisberger, but that Lisberger was now dead and his estate insolvent, and praying that a rule be issued against Rosenbaum to show cause why he should not have the goods forthcoming or pay their value.

Rosenbaum answered, saying that Lisberger had taken two appeals, each time giving bond with ample security, and that the said assignee should proceed against one or both of these two sets of securities named above for satisfaction of the decree against Lisberger. The district court gave judgment against Rosenbaum for $7,600, the estimated value of the goods fixed in the decree against Lisberger,

after deducting the amount made out of Lisberger on execution. Rosenbaum then applied to the circuit court of the United States for an appeal, which was refused, and the said court refused the said Rosenbaum an appeal to the supreme court of the United States.

The said Rosenbaum then applied to the supreme court of the United States for a *mandamus,* to compel the allowance of the appeal so refused by the circuit court; but this was refused by the supreme court.

In December, 1879, the district court entered a decree requiring Rosenbaum to deposit in the Planters National Bank the sum of $7,923.19 to the credit of the cause, in default of which execution should issue forthwith. Thereupon the said Rosenbaum deposited the amount so required, and filed certificate of the same.

Rosenbaum then brought his suit in the chancery court of the city of Richmond against the several securities of the said Lisberger, in the two successive appeal bonds, for the sum so paid by him as mentioned above.

The cause was matured in the said chancery court of the city of Richmond, and finally heard on the depositions taken on both sides; and on the 19th day of April, 1881, the said chancery court of the city of Richmond entered a decree dismissing the bill of the said Rosenbaum. From this decree the said Rosenbaum applied to this court for an appeal, which was allowed on the 28th day of June, 1881, by one of the judges of this court.

The question to be determined in this case is, whether the appellant Rosenbaum, who was the surety on the forthcoming bond for the delivery of the attached effects in accordance with the order of the district court, and who has been made to pay the money, has any claim to be reimbursed by the appellees, who were securities on the two appeal bonds, and if so, whether out of both sets, or out of the first, or out of the second set of securities on such ap-

peal bonds. The appellant claims that upon the doctrine of subrogation he is entitled to have compensation and be reimbursed out of the sureties in both appeal bonds mentioned above; that it is not necessary in order that the principle should apply that the question should arise between principal and surety, but that it may properly be applied in the case of co-securities where one has paid what was the common debt of all, or the case where one secondarily liable has paid a debt for which some other is primarily liable.

It is not needful in order that this equity may prevail, that the relation between the parties should be that of principal and surety in the same bond. It is enough if he who pays the money pays a debt for which he is bound, and which is the proper debt of the other party. The doctrine of substitution has nothing of form or technicality about it. It is the creature of equity, and real essential justice is its object, so that the doctrine is applicable wherever the *substance* of the relation of principal and surety exists without regard to the mere form.

The surety who pays the debt of his principal is entitled to be subrogated to the rights of the creditor, and to all collateral securities which the creditor has obtained. *Craythorne* v. *Swinburne*, 14 Ves 162; *Copis* v. *Middleton*, 1 Turn. & Rus. (11 Condensed Eng. Ch.), 224; *Hodgson* v. *Shaw*, 3 My. & K. (8 Condensed Eng. Ch.), 183.

Subrogation has been confined in this State, and in the supreme court of the United States, to persons standing in the relation of surety, or of one bound in person or property for or with another. A surety who pays the debt for which he is bound as surety, is entitled to be subrogated to a judgment or decree against his principal, to have the benefit of such judgment and whatever lien may exist under it. A surety who pays a debt however secured, is entitled to have the benefit of such security. *Walker* v.

*Crowder,* 2 Ired. Equity R. 479, 486 ; *Wheatley* v. *Calhoun,* 12 Leigh, 274.

As subrogation or substitution is the means of procuring for the surety indemnity from the principal, so contribution brings about an equality amongst co-securities by obliging those who have paid nothing, or less than their proper share, to indemnify those who have paid more.

The principles and practice, with regard to it, are similar to those relating to subrogation.

The doctrine is not founded on contract, but is the result of general principles of justice and equity, on the ground of equality of burden and benefit; and hence it is immaterial that the sureties are bound by different instruments, and without the knowledge of one another, provided *they are bound for the same principal,* and by the same engagement. *Dering* v. *Earl of Winchelsea,* 1 Cox, 318 ; 1 Wh. & Tud. L. Cas. 78–81; *Craythorne* v. *Swinburne,* 14 Ves. 165; *Copis* v. *Middleton,* 11 Condensed Eng. Ch. 224.

But the right of mutual contribution exists only amongst those who are co-securities—that is, sureties for the same thing, and bound for the discharge of the same duty, whether by the same or different instruments, at the same or different times, and with or without the knowledge of one another. *Harrison* v. *Lane,* 5 Leigh, 450, 600 ; *Stout* v. *Vause,* 1 Rob. 179.

Where several or successive obligations of suretyship are not in substance those of original sureties for the same thing, the doctrine of contribution requires several distinctions to be noted.

Where the obligations of the different classes of sureties are for wholly distinct things, and have no relation to, nor operation upon one another, though they may arise out of the same principal indebtedness, there is no claim from one class upon the other either for contribution or indemnity.    3 Minor's Inst. 394, and authorities cited.

The claim of the appellant Rosenbaum against the appellees is founded upon the alleged application of the doctrine of substitution. Upon what principle can Rosenbaum ask to be substituted to the right of the assignee to proceed against the securities in the two appeal bonds?

The principle of subrogation applies upon the payment by those who are secondarily liable for a debt or duty, and will give a right to such to enforce the debt against every one whose liability is primary, as compared with that of the person by whom payment is made, such payment operating as a purchase and not as an extinguishment, unless there is a manifest purpose to extinguish. Upon what principle can the appellant be held to be secondarily liable for this debt as to the appellees as sureties on the two appeal bonds? His obligation was to deliver the goods on the order of the court, and was the same exactly as Lisberger's obligation, except that he was a security for Lisberger. If this obligation was complied with by Lisberger, or his security Rosenbaum, what was the obligation upon the appellees in the appeal bonds? Such as they assumed—to-wit: that Lisberger should prosecute his appeal to effect, and if unsuccessful pay all costs and damages.

If Lisberger had delivered the goods or paid the money, there would have been no liability upon Rosenbaum. If not, what liability was upon Rosenbaum? Such as he had assumed—to wit: to deliver the goods or pay the money upon the order of the court. Lisberger did not deliver the goods nor pay the money; and Rosenbaum not being able to deliver the goods, has been adjudged to pay the money. Now, what is the obligation upon these sureties to pay back this money to Rosenbaum or to reimburse him? Suppose Lisberger had paid, what pretext would he have had to demand of *his* sureties to reimburse him? And has Rosenbaum any more right as against these appellees to be reimbursed? It cannot be contended that they were co-sure-

ties with him    They were not bound for the same engage-
ment.   Rosenbaum's contract was to produce the goods or
pay their value.   This was an original engagement with the
court, which the court has compelled him to comply with.
The engagement of the sureties was a different engagement
made to a different person and executed with a different
purpose.   When sureties are bound for the same principal,
and upon his default one of them is compelled to pay the
money, or to perform any other obligation for which they
all are bound, the surety who has paid the whole is enti-
tled to receive contribution from all the others for what
he has done in relieving them from a common burden.
The claim certainly has its foundation in the clearest prin-
ciples of natural justice ; for, as all are equally bound and
equally relieved, it seems but just that in such a case all
should contribute in proportion towards a benefit obtained by
all.  And the doctrine has an equal foundation in morals,
since no one ought to profit by another man's loss where he
himself has incurred a like responsibility.   Any other rule
would put it in the power of the creditor to select his own
victim, and, upon motives of mere caprice or favoritism, to
make a common burden a most gross personal oppression.  It
would be against equity for the creditor to exact or receive
payment from one and to permit or by his conduct to cause
the other debtors to be exempt from payment.  And the
creditor is always bound in conscience, although he is sel-
dom bound by contract, as far as he is able, to put the party
paying the debt upon the same footing with those who are
equally bound.

It can be no matter of surprise, therefore, to find that
courts of equity, at a very early period, adopted and acted
upon this salutary doctrine, as equally well founded in
equity and morality.

The ground of relief does not, therefore, stand upon any
notion of mutual contract, express or implied, between

the sureties to indemnify each other in proportion, but it arises upon principles of equity independent of contract. If the doctrine were otherwise the surety would be utterly without relief.    Story's Eq. Jur. p. 472.

Were these appellees co-securities of the appellants in his undertaking?    Were they in any wise bound toward the execution of the contract which he assumed?

He was a security for Lisberger, but he cannot be said to be in any sense a co-security with the appellees.    We think that the principle of subrogation has no application to this case, and that the chancery court rightly so decided.

If the goods had remained in the possession of the marshal to await the termination of the litigation, they would have been sold and the proceeds applied toward the liquidation of the debts of Engle & Son.    And such payment would have saved harmless the appellees, as sureties on the appeal bonds.    And the assignee, having been paid, would have no claim against the obligors in the appeal bonds, except for damages and costs.    The forthcoming bond stood in the place of the goods and became their substitute; and it must be held that any judgment or decree that would have bound the goods if they had remained undisturbed in the marshal's hands, would also bind the obligors in the forthcoming bond.

The chancery court correctly held that Rosenbaum, though the surety of Lisberger, as to the sureties in the appeal bonds, was primarily liable, and that they had the right to look to the forthcoming bond precisely as they would have had the right to look to the goods if they had not been released.

Attachments are made for the benefit of creditors, but the provision made for the discharge of the property attached, is made for the benefit of the debtors.    They may demand as a right, on complying with the requirements of the law in that behalf, to have their property discharged

from attachment, and that a bond with sureties be accepted in its place.

Under these circumstances it is quite obvious that the bond becomes a substitute for the property released; and when there are no special circumstances to render the case an exceptional one, it must be held that any judgment that would have bound the property, if it had remained under attachment in the hands of the marshal, will bind the obligors in the bond. *Imbusch* v. *Farwell,* 1 Black. U. S. S. C. R. p. 573.

We are of opinion that there is no error in the decree appealed from in this case, but that the same is plainly right and must be affirmed.

FAUNTLEROY, J., dissented.

DECREE AFFIRMED.