# Richmond

## FIDELITY AND DEPOSIT CO. OF MARYLAND v. GILL AND OTHERS.

### March 12, 1914.

### Absent, Cardwell, J.

1. HIGHWAYS — *Road Taxes—Levy and Collection—Supervisors—* The county of Loudoun has nothing to do with assessing, levying or collecting road taxes in said county, and is not amenable to suit for such taxes collected by the sheriff and misappropriated by him. These taxes are to be collected by the sheriff of the county who is charged with the duty of accounting to the board of road commissioners, a separate body politic created by the act providing for such taxes.

2. COUNTIES — *Board of Supervisors—Duties and Powers—Taxation—* The powers and duties of a board of supervisors in this State are not judicial in their character, but are wholly executive or administrative. It can only levy taxes for such purposes as the statutes authorize. It can order the payment of no money except in compliance with authority given it by the statutes. In its relation to the treasurer of the county, it can only order him to pay money from funds with which he is chargeable, and afterwards audit his accounts.

3. COUNTIES—*Board Of Supervisors—Misappropriation—Demurrer—* A bill against the board of supervisors of a county to recover funds alleged to have been illegally diverted by its treasurer which contains no allegation that the board has been guilty of any wrong doing, or violated any duty imposed upon it by law, and does not allege that the board had any knowledge of the money alleged to have been diverted by its treasurer, or what disposition was made of it, or ever had anything to do with it, is bad on demurrer.

4. COUNTIES—*How Sued*—Counties are political subdivisions of the State and can only be sued in the manner prescribed by statute.

5. COUNTIES — *Claims—Presentation to Board of Supervisors.—*

The phrase "any claim" in section 844 of the Code (1904) declaring that "no action shall be maintained against a county upon any claim until such person shall have first presented his claim to the board of supervisors of such county for allowance" is broad enough to embrace every character of claim whether legal or equitable.

6. SUBROGATION—*Sureties—Independent Obligations.*—The surety on the bond of a deputy sheriff has no right of action against the surety on the bond of the same person in his capacity of deputy treasurer for money alleged to have been collected by the deputy sheriff and applied by him to his liabilities as deputy treasurer, in the absence of any allegation that the surety of the deputy treasurer had any knowledge of or participation in the alleged misapplication or of other facts fixing a liability upon him. The two obligations bear no relation to each other, are separate and distinct, and were executed at different times to different individuals. There was no common purpose, no common obligation and no common debt to be secured by the two separate sureties. The doctrine of subrogation has no application to such a case.

7. SUBROGATION—*Principal and Surety—Adequate Remedy at Law.*—If a deputy sheriff, charged with the collection of road taxes, gets the treasurer of the county to make the collections for him and he does so and misapplies the funds so collected, the collection by the treasurer is in his individual capacity, and, if liable at all to the surety on the bond of the deputy sheriff, the remedy at law is full, adequate and complete.

Appeal from a decree of the Circuit Court of Loudoun county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Moore, Barbour, Keith & McCandlish* and *Cecil Connor,* for the appellant.

*E. E. Garret,* and *Wm. H. Martin,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This bill was filed by the appellant, Fidelity and Deposit Company of Maryland, against the board of supervisors of Loudoun county, the United States Fidelity and Guaranty Company, John L. Gill in his own right and as treasurer of Loudoun county, and D. C. Myers. Each of the defendants, except Myers, filed a separate demurrer to the bill. From a decree of the circuit court sustaining these demurrers and dismissing the bill this appeal has been taken.

It appears from the allegations of the bill that the complainant was surety for Eugene Monroe, the duly elected sheriff of Loudoun county, upon his official bond as such sheriff, for the term of four years beginning January, 1904; that the complainant was also the surety of D. C. Myers, the duly appointed deputy of sheriff Monroe, upon his official bond, dated January, 1904, given to indemnify the sheriff against loss by reason of any default of such deputy. The bill further alleges that under a special road law, duly enacted for the county of Loudoun, it was the duty of the sheriff, either personally or through his deputy, to collect and properly account for all of the road taxes levied by the board of supervisors of Loudoun county for the several road districts of the county, and that the board of supervisors did levy for the years 1905-1906 certain assessments for road purposes for the district called and known as "Mt. Gilead Magisterial District," the official body of which district was "The board of commissioners of roads," a body politic and corporate under the laws of the State. It was further alleged that the tickets for this assessment for road purposes in Mt. Gilead Magisterial District were placed for collection in the hands of D. C. Myers, the deputy sheriff, whose duty it was to collect the same and account therefor to the board of commissioners of roads for Mt. Gilead Mag-

isterial District, that said Myers, as deputy sheriff,
having collected and failed to account for such taxes,
a suit at law was instituted in the Circuit Court of
Loudoun county in the name of the Commonwealth, at
the relation of the board of commissioners of roads
of Mt. Gilead Magisterial District against Eugene
Monroe, sheriff, and the complainant as his surety upon
the official bond of such sheriff, and judgment obtained
for the penalty of the bond to be discharged by the pay-
ment of $3,627.63, with interest and costs, subject to a
credit of $1,059.41; that inasmuch as complainant was
surety to the sheriff, the principal debtor in this judg-
ment, for the faithful discharge by Myers, the deputy,
of his duties as such, it became its duty to indemnify
the sheriff by discharging the judgment which had, as
mentioned, been obtained against him by reason of the
default of the deputy, Myers. It further appears from
the allegations of the bill that D. C. Myers was the
deputy of John L. Gill, the treasurer of Loudoun county,
at the same time that he was the deputy of Eugene
Monroe, the sheriff, and that the defendant, United
States Fidelity and Guaranty Company, was the surety
upon the official bond of the treasurer and also upon that
given by his deputy, Myers, to indemnify the treasurer
against loss by reason of the default of such deputy.

The bill alleges that D. C. Myers resigned and
ceased to be deputy treasurer as of January 1, 1906, but
continued thereafter to be deputy sheriff and as such to
receive for collection road tax tickets for Mt. Gilead
Magisterial District. It is further alleged that D. C.
Myers having in his hands for collection taxes pre-
viously received from the treasurer as well as the road
taxes subsequently received from the sheriff, author-
ized the treasurer to collect from numerous taxpayers a
large sum on account of the road taxes that had been

placed in his hands by the sheriff, which properly belonged to and should have been accounted for to the board of commissioners of roads for Mt. Gilead Magisterial District, or to Eugene Monroe, sheriff; that John L. Gill, treasurer, well knew that the road taxes so collected by him did not belong to Myers, or to the county of Loudoun, or to the State of Virginia, but that they belonged to the board of road commissioners of Mt. Gilead Magisterial District and should be accounted for to it; that notwithstanding this knowledge he applied the proceeds of such road taxes in his hands, in discharge of the arrearage to himself of D. C. Myers for taxes previously collected and then unaccounted for by him as deputy treasurer, in derogation of the rights of the board of road commissioners of Mt. Gilead Magisterial District, and of Eugene Monroe, and of complainant as surety on the bond of D. C. Myers as deputy sheriff. Complainant further alleges that it is informed, believes and charges that at least $2,266.00 of the road taxes was thus diverted by Gill, treasurer, from the true owners and misapplied. Complainant further alleges that at the time of this diversion of these funds John L. Gill well knew that D. C. Myers, his deputy, was indebted to him as treasurer in an amount beyond his ability to pay, and that he was utterly insolvent and a non-resident of the State, and that a judgment against him would be worthless; that Gill, knowing both of the insolvency and the deficit of Myers, intended and contrived to indemnify and save harmless the county of Loudoun and the board of supervisors thereof, himself as treasurer of the county, and the United States Fidelity and Guaranty Company, the surety on his official bond and the surety on the bond of D. C. Myers to himself as deputy treasurer, at the expense of Monroe, sheriff, and his sureties. The prayer of the bill is that the defendants or such of

them as may be liable therefor may be decreed and required to pay to the complainant the sums of money diverted with interest, and for general relief.

Taking up the demurrers of the several defendants separately, it is difficult to understand upon what theory the board of supervisors of Loudoun county was made a party to this suit, and sought to be held liable to the complainant for a money decree, as prayed for, against it. The bill is at fault in alleging that under the special road law mentioned, the board of supervisors had anything to do with levying taxes for the several road districts in the county, or that it did levy such taxes in the present instance. An examination of the special road law, to which the bill makes reference, shows that the board of supervisors of Loudoun county had nothing to do with assessing, levying, or collecting road taxes in Loudoun county, indeed the board of supervisors is not mentioned throughout the act. On the contrary, the act creates a board of commissioners of roads, as a body politic and corporate with exclusive jurisdiction and control of roads and the levying of taxes for their maintenance. The taxes so levied are to be collected by the sheriff of the county, who is charged with the duty of accounting to the board of road commissioners for the same. Acts 1879-1880, pp. 60-64.

The powers and duties of a board of supervisors in this State are not judicial in their character, but are wholly executive or administrative. *Board* v. *Catlett's Ex'or*, 86 Va. 158, 9 S. E. 999. It can only levy taxes for such purposes as the statutes authorize. It can order the payment of no money except in compliance with authority given it by the statutes. In its relation to the treasurer of the county, it can only order him to pay money from funds with which he is chargeable, and afterwards audit his accounts.. The bill contains no

allegation that the board of supervisors has been guilty of any wrong doing, or that it has violated any duty that the law imposes upon it. There is no allegation that the board of supervisors ever had any knowledge of the money alleged to have been diverted by Gill, treasurer, where such money came from, or what disposition was made of it, or ever had anything whatever to do with it.

The attitude of complainant seems to be, that it can indirectly sue the county of Loudoun, which is not a party to this suit, by suing the board of supervisors. If this were true, the bill would still be defective, for the county being a political sub-division of the State, it can only be sued in the manner prescribed by the statute.

Section 844 of the Code, 1904, expressly provides that "No action shall be maintained against a county upon any claim until such person shall have first presented his claim to the board of supervisors of such county for allowance."

In *Botetourt* v. *Burger,* 86 Va. 530, 10 S. E. 264, in commenting upon this section and section 843, it is said: "This is the mode prescribed by law by which claims may be collected against the county, and the county cannot be sued in any other mode than that provided by law."

It is not pretended that these sections have been complied with in the present case, or that section 802, providing for service of process on the Commonwealth's attorney, when a county is sued, has been observed. Appellant insists that it is only legal demands that are required to be first presented to the board of supervisors before suit can be brought against the county. No authority is cited in support of this proposition and no reason is perceived why the statute should be so construed. The language "any claim or demand" is broad

enough to embrace every character of claim, whether legal or equitable. *Com'th v. Higginbotham,* 25 Gratt. (66 Va.) 627.

It is clear that the bill alleges no ground for equitable relief against the board of supervisors. It is equally plain that no equity is alleged in favor of the complainant surety company against the defendant, the United States Fidelity and Guaranty Company. Their obligations bore no relation whatever to each other. They were separate and distinct, executed at different times to different individuals. There was no common purpose, no common obligation and no common debt to be secured by these two separate surety companies. The complainant surety company undertook to guarantee to Eugene Monroe, who is not a party to this suit, the faithful discharge of the duties of D. C. Myers as deputy sheriff. The defendant, United States Fidelity and Guaranty Company, assumed no obligations of any kind to Monroe, or the complainant. The liability of this defendant is measured alone by the terms of its contract as surety, and it can only be brought under liability according to the strict terms of the bonds it executed. There is no allegation that this defendant surety company had any knowledge of or any participation whatever in the alleged misapplication of funds by Gill, nor are any facts alleged that would fix a liability upon it.

The doctrine of subrogation invoked by the appellant can have no application to the facts alleged in this case. *Rosenbaum v. Goodwin,* 78 Va. 121, 127; *Liles v. Rogers,* 113 N. C. 197, 18 S. E. 104, 37 Am. St. Rep. 627; *Sands v. Durham,* 99 Va. 263, 38 S. E. 145, 54 L. R. A. 614, 86 Am. St. Rep. 884.

As to the defendants Gill and Myers, the complainant has an adequate remedy at law. When the complainant paid the judgment which was obtained against Monroe

and complainant by the board of road commissioners, it had ample remedy under sections 910 and 911 of the Code to have obtained judgment against Myers, the deputy, for Monroe. It was no part of the official duty of John L. Gill, as treasurer, to collect the road taxes mentioned. The sheriff of the county was charged with that duty and with the further duty of accounting therefor to the board of road commissioners. If, therefore, Gill collected such taxes at the request of Myers, deputy sheriff, he did so in his individual capacity and is not chargeable therewith as treasurer. If responsible at all for any such collections, as to which we express no opinion, he is liable only as an individual for the amount of road taxes he is alleged to have collected and diverted to the prejudice of the complainant. That sum, as alleged in the bill, is certain and ascertainable, and the remedy of complainant to enforce the same by suit at law against Gill is plain.

Upon the whole case, we are of opinion that the decree complained of, sustaining the several demurrers and dismissing the bill, is without prejudice to the rights of the complainant and must be affirmed.

*Affirmed.*