COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


UNINSURED EMPLOYER'S FUND

MEMORANDUM OPINION* BY
v.        Record No. 2320-04-4            JUDGE JAMES W. BENTON, JR.
                                          AUGUST 2, 2005
CHERYL E. DUFFNER AND
  MONTGOMERY WARD & COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Iris W. Redmond (Midkiff, Muncie & Ross, P.C., on brief), for
appellant.

(Cheryl Duffner, *pro se*, on brief).

No brief or argument for appellee Montgomery Ward & Company.


Cheryl Duffner suffered a compensable injury in 1978 while working for Montgomery

Ward & Company and received an award for lifetime benefits.  Montgomery Ward, a

self-insured employer, was declared bankrupt in 2000.  Upon Duffner's application for payment

of medical expenses, the Workers' Compensation Commission ruled that the Uninsured

Employer's Fund was required to pay Duffner's benefits pursuant to Code § 65.2-1203(A),

which was amended in 1983 to provide benefits from the Fund "[w]henever . . . a self-insured

employer or its surety . . . is unable to satisfy an award in whole or in part."  The Fund contends

the commission erred in ruling that the statute "should be applied retroactively" and in requiring

the Fund to pay Duffner's benefits.  For the reasons that follow, we affirm the award.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

In 1980, the commission entered an award against Montgomery Ward & Company, a self-insured employer, and in favor of Cheryl Duffner for injuries sustained in 1978 to her right upper extremities. The award included lifetime medical benefits, which Montgomery Ward paid until 1987, when it surrendered its self insurance privilege. Duffner continued to receive benefits from Montgomery Ward's commercial insurance carrier until payments were discontinued in 2000, when Montgomery Ward was liquidated in bankruptcy.

On January 22, 2002, Duffner filed an application seeking payment for medical expenses. The deputy commissioner found that Duffner's medical and travel expenses were causally related to her 1978 injury by accident, but ruled that the Uninsured Employer's Fund was not liable for those payments because Duffner's injury occurred in 1978, prior to the 1983 amendment of Code § 65.1-149.[1] The deputy commissioner ruled that the General Assembly

---

[1] In 1978, Code § 65.1-149 provided as follows:

> After an award has been entered against an employer for compensation benefits under any provision of this chapter, and upon a finding that the employer has failed to comply with the provisions of § 65.1-104, the Commission shall order the award to be paid from the Uninsured Employers Fund.

At that time, Code § 65.1-104 contained the following provision:

> Every employer subject to this Act shall insure and keep insured his liability thereunder in some corporation, association, or organization or State insurance fund authorized to transact the business of workmen's compensation insurance in this State or in some mutual insurance association formed by a group of employers so authorized, or shall furnish to the Industrial Commission satisfactory proof of his financial ability to pay direct the compensation in the amount and manner and when due as provided for in this Act. In the latter case the Commission may in its discretion require the deposit of an acceptable security, indemnity or bond to secure payment of compensation liabilities as they are incurred. . . .

gave no indication it intended retroactive application of the amended statute (now Code § 65.2-1203(A)(1)).

Duffner appealed to the full commission. The commission noted that the Fund did not dispute that Duffner's medical expenses were causally related to her injury by accident. The commission agreed with the deputy commissioner's ruling that when the injury by accident occurred in 1978, the Workers' Compensation Act did not require the Fund to pay benefits on behalf of a self-insured employer who was unable to pay, unless the employer had violated the Act. The commission found that Montgomery Ward had not violated the Act and had complied with the requirements of Code §§ 65.1-149 and 65.1-104 prior to its liquidation. As the commission explained, it could have required Montgomery Ward to provide satisfactory proof of its financial ability to pay; it could also have required Montgomery Ward to provide a deposit of an acceptable security, indemnity, or bond; but it did not do so. Because of these circumstances, the Fund would have not been liable under the law as it existed in 1978.

After reviewing the purpose for which the General Assembly created the Fund, the commission construed Code § 65.2-1203, which is the successor to Code § 65.1-149, and ruled that it was applicable to the facts of this case. Two members of the commission ruled that the legislature intended for Code § 65.2-1203 to apply retroactively and that, when the statute was applied to the circumstances of this case, the Fund was required to pay Duffner's medical expenses because Montgomery Ward was unable to satisfy the award.

One commissioner disagreed with the conclusion that the statute could be applied retroactively. He joined in the result, entering an award against the Fund, but reasoned that this was not a retroactive application of the statute because Duffner's cause of action against the Fund did not arise until she incurred medical bills in 2000. At that time, Montgomery Ward and

- 3 -

its surety were no longer able to pay for her medical treatments, which occurred after the bankruptcy liquidation in 2000 and after the Fund became liable under the 1983 amendment.

## II.

The Fund contends that the commission erred in entering an award requiring the Fund to pay Duffner's medical benefits and in ruling that Code § 65.2-1203 should be applied retroactively.

While "[t]he commission's construction of the Act is entitled to great weight on appeal," Am. Mutual Fire Ins. Co. v. Barlow, 4 Va. App. 352, 354, 358 S.E.2d 184, 186 (1987), we review *de novo* questions of law, such as whether Code § 65.2-1203(A)(1) applies retroactively or prospectively. Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999).

The statute, which was amended in 1983, now provides, in pertinent part, as follows:

> Whenever, following due investigation of a claim for compensation benefits, the Commission determines that . . . the employer of record has failed to comply with the provisions of [Code] § 65.2-801 or that a self-insured employer or its surety as required by [Code] § 65.2-801 is unable to satisfy an award in whole or in part . . . the Commission shall make a provisional award of compensation benefits, or any unpaid balance thereof, without further delay. Thereafter, the Commission shall make a final award concerning such benefits or unpaid balance thereof, in accordance with the provisions of this chapter and all applicable provisions of this title. The Commission shall order payment of any award of compensation benefits pursuant to this chapter from the Uninsured Employer's Fund.

Code § 65.2-1203(A)(1).

The statutory language is unambiguous. The issue this case presents is whether the statute may be applied retroactively and whether its application to Duffner's case is a retroactive application of the statute. The Fund contends that the statute must be applied retroactively to

require it to pay Duffner's claim and that this application is contrary to legislative intent. We disagree.

In our determination of these issues, we begin, as did the commission, by looking at the purpose of the Fund and the language of the 1983 amendment. We first examine the purpose of the Fund.

> The Fund, a statutorily created entity financed by taxes levied upon insurers, functions as a workers' compensation insurer of last resort under the limited circumstances described in the statute, i.e., when an employer fails to be suitably insured as required by Code § 65.2-801 or otherwise fails to satisfy a compensable claim. See Code § 65.2-1203(A).

Uninsured Employer's Fund v. Flanary, 27 Va. App. 201, 206-07, 497 S.E.2d 912, 914 (1998). Interpreting Code § 65.1-149 as it existed prior to the 1983 amendment, we held that the Fund's function as a last resort is a means "to insure that injured employees will be paid their compensation benefits even though their employer has breached [its] duty to secure compensation insurance." A.G. Van Metre, Jr., Inc. v. Gandy, 7 Va. App. 207, 213-14, 372 S.E.2d 198, 202 (1988).

Prior to 1983, the Fund was mandated to pay benefits to employees of employers who had "breached their duty to secure compensation insurance," (see former Code § 65.1-149); however, the language of the statute did not provide coverage for claims against self-insured employers who, after becoming insolvent, could no longer satisfy their awards. The General Assembly obviously was aware of a gap in the Fund's last resort function, and it amended the statute to provide the following: "Whenever . . . a self-insured employer or its surety as required by § 65.2-801 is unable to satisfy an award in whole or in part . . . the Commission shall make a provisional award of compensation benefits, or any unpaid balance thereof . . . [and] shall order payment of any [final] award . . . from the Uninsured Employer's Fund." Code § 65.2-1203(A)(1).

In our review of the statute, we are guided by the principle that "'[w]e must take the statute as we find it, gather the legislative intent from the words used and give effect to the purposes thus ascertained.'" Jeneary v. Commonwealth, 262 Va. 418, 426, 551 S.E.2d 321, 324 (2001) (quoting Van Geuder v. Commonwealth, 192 Va. 548, 554, 65 S.E.2d 565, 568 (1951)). In so doing, we note that the Supreme Court has on several occasions interpreted statutes under the Act against claims that the statutes were improperly deemed retroactive. Answering a question posed by the commission, the Court in Allen v. Mottley Const. Co., 160 Va. 875, 170 S.E. 412 (1933), determined that the language of a statute unambiguously "shows it was intended to apply retroactively and prospectively." Id. at 889, 170 S.E. at 417. The Court's analysis in Allen is germane to this case:

> [The amended statute] provides "no such review *** shall be made after twelve months from the date of the last payment of compensation pursuant to *an award* under this act". . . . The legislature has placed a limitation in which the petition for review must be filed. The words "an award" are all-inclusive. If the interpretation of the statute claimed by the employee in this case should be placed upon the act, then it would be necessary for us to supply words not found in the statute; that is, such construction would make the act read "no such review *** shall be made after twelve months from the date of the last payment of compensation to *any* award *hereafter made*." Such is not the language of the act. As adopted, it includes two classes of awards -- those theretofore made, and those thereafter to be made. There is nothing in the phraseology that confines its operations to either past or future awards, but both are included. For interpretation of similar language see Litton's Case, 101 Va. 833, 44 S.E. 923 [(1903)]; Wilkes v. Wilkes, 115 Va. 886, 80 S.E. 745 [(1914)]; Walker v. Temple, 130 Va. 567, 107 S.E. 720 [(1921)]; Fidelity Co. v. Gill, 116 Va. 86, 81 S.E. 39 [(1914)]; Southern Railway Co. v. Simmons, 105 Va. 651, 55 S.E. 459 [(1906)].

Allen, 160 Va. at 889-90, 170 S.E. at 417.

The Supreme Court has continued to apply this interpretation and "has relied upon Allen as a 'decisive' example of a situation where retrospective intent is expressed in legislative language." Buenson Division v. McCauley, 221 Va. 430, 435, 270 S.E.2d 734, 737 (1980). We,

likewise, have applied this same interpretation model to the words, "all wages," in an amended Workers' Compensation statute and concluded that the statute, "as written, evidences a retrospective legislative intent to include all wages, those already paid at the time of [the statutory] enactment, and those thereafter paid." Cohen v. Fairfax Hospital Association, 12 Va. App. 702, 710, 407 S.E.2d 329, 332 (1991).

In view of these decisions, we hold that, by using the term "an award" in the language of the 1983 amended statute ("[w]henever . . . a self-insured employer or its surety . . . is unable to satisfy *an award*"), the General Assembly intended that Code § 65.2-1203(A)(1) would apply to both future awards and those already in existence. As the Supreme Court noted in Allen, if the General Assembly did not intend to cover pre-enactment injuries, it could have simply included the language that the Fund was only liable for those "awards . . . hereafter made." 160 Va. at 889, 170 S.E. at 417. It did not do so when it amended the Act in 1983 to expand the claims the Fund was required to pay. Instead, the plain language of the statute expresses an intention "that it includes both *past* and future awards." Id. at 890, 170 S.E. at 417. Thus, we hold that the General Assembly intended to include both potential and currently existing awards with the amendment and that the commission did not err in holding that the statute applied to require the Fund to pay the award.

The Fund contends further that "the amendment should not be applied retroactively because it affects the substantive rights of the Fund." The Fund argues it has a substantive right that is affected by a retroactive application of the statute because "[t]he amendment created an obligation, where one did not previously exist, for the Fund to step in and respond to non-payment of self-insured."

In essence, the Fund, a statutorily created entity, contends that even if the General Assembly manifested an intention that the statute be applied retroactively, it has a substantive

right it can assert to thwart the intention of the General Assembly. While Courts long have

embraced a presumption against retroactivity that burdens *private* vested rights, see Shiflet v.

Eller, 228 Va. 115, 120, 319 S.E.2d 750, 753 (1984), the Fund provides no authority for the

proposition that it, a legislatively created statutory entity, can interpose a claim that it has a

protected substantive right in the statute as it existed prior to 1983 and that the legislature cannot

adjust retrospectively the Fund's statutory obligation.[2]  We need not address this policy issue

because we hold that when applied in this case the 1983 amendment acted prospectively.

> A statute does not operate "retrospectively" merely because it is
> applied in a case arising from conduct antedating the statute's

---

[2] Although the commission did not address this issue, several authorities suggest that such a claim may not be asserted by a state created entity:

> "A state constitutional provision barring the passage of retroactive laws protects only the rights of citizens; hence, a state may constitutionally pass a retroactive law which impairs its own rights and the rights of municipalities in such states."  16B Am. Jur. 2d Constitutional Law § 697 (2004) (footnotes omitted).

> "[T]he state itself has no protection against retroactive application of an act of its legislature."  2 Norman J. Singer, Statutes and Statutory Construction § 41:3 (6th ed. 2001).

> "[T]he general rule applicable to individuals does not apply to retroactive legislation impairing a state's own rights.  A state has no vested rights which are immune from its legislative control." Skelton v. B.C. Land Co., 539 S.W.2d 411, 413 (Ark. 1976) (citing 16 C.J.S. Constitutional Law § 243 (1956)).

> "This state may constitutionally pass retrospective laws waiving or impairing its own rights or those of its subdivisions, or imposing upon itself or its subdivisions new liabilities with respect to transactions already passed, as long as private rights are not infringed.  'The court [in Fullilove v. U.S. Casualty Co. of New York, 129 So.2d 816 (La. App. 1961),] distinguished divesting a state of its rights from divesting a person of his or her rights; the latter action oversteps constitutional limitations on state action, whereas no such proscriptions prevent a state from passing retrospective laws waiving or impairing its own vested rights.'" Rousselle v. Plaquemines Parish Sch. Bd., 633 So.2d 1235, 1247 (La. 1994) (citations omitted).

enactment or upsets expectations based in prior law.  Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.  The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.  Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity.  However, retroactivity is a matter on which judges tend to have "sound . . . instinct[s]," and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

Landgraf v. USI Film Products, 511 U.S. 244, 269-70 (1994) (citations and footnotes omitted).

As we have noted, the General Assembly amended the Act in 1983 to provide for payment of claims by the Fund to employees of "a self-insured employer . . . [that] is unable to satisfy an award in whole or in part."  Code § 65.2-1203(A)(1).  At the time the statute was enacted, Montgomery Ward was a self-insured employer.  In 2000 Montgomery Ward was liquidated in bankruptcy.  In 2002, Duffner filed an application to have her medical expenses paid because Montgomery Ward's agent had stopped payments in November 2000.

We agree with Commissioner Tarr's assessment that, on these facts, the statute can properly be viewed as operating prospectively.  In this case, while the "rights of the employer and employee [were] fixed at the time of the injury by accident," see Roller v. Basic Construction Co., 238 Va. 321, 330, 384 S.E.2d 323, 327 (1989), Montgomery Ward continued to pay Duffner's award well beyond 1983 when the statute was amended.  The Fund's obligation was only inchoate in 1983.  Had Montgomery Ward remained an ongoing concern, the Fund might never have become liable.  Thus, by definition, the operation of the amended statute on these facts was prospective.  Making the Fund liable for what was only a potential future obligation, and for an obligation it might never incur, is plainly a prospective application.

For these reasons, we affirm the commission's award.

Affirmed.