### 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## HOLSTON CORPORATION V. WISE COUNTY.

### September 22, 1921.

1. COUNTIES—*Constitutional Law—Credit of County—Guarantee by County of Road Contractor's Purchases—Section 185 of the Constitution of 1902.*—A county before it advertised for bids from contractors for certain road work made a contract with appellant that appellant would furnish crushed stone to any and all contractors to whom the road work might be subsequently let at a special price, and in consideration of the furnishing of the stone for such use at such price, the county, on its part, guaranteed to the appellant payment for the same.

   *Held:* That this contract did not fall within the inhibition of section 185 of the Constitution of 1902, providing that the credit of a county should not be directly or indirectly guaranteed to or in aid of any person.

2. AGENCY—*Ratification—Acceptance of Benefits—Counties—Highway Engineer.*—A county engineer on behalf of the county made a contract with appellant guaranteeing the payment for stone furnished road contractors for use on the county roads. The county had unquestionable authority to make such contract under Acts 1910, p. 62. The board of supervisors ratified and approved the act of the engineer in making the contract, and the county accepted the benefit of the contract.

   *Held:* That it was immaterial whether originally the engineer did or did not exceed his authority, the county could not at the same time approbate and reprobate, holding the benefit of and repudiating the contract.

3. COUNTIES—*Guarantee by County of Road Contractor's Purchases—Case at Bar.*—A county guaranteed the payment for all stone furnished road contractors by appellant for certain road work. Under this guarantee, appellant furnished a road contractor with stone, and had a difference with him as to settlement for the same. Thereafter, appellant entered into a second contract with this contractor, whereby their past differences were settled, and appellant undertook to furnish more stone for the road work. This second agreement in no way operated to increase the liability of the county under its contract with appellant.

> *Held:* That this second contract did not operate to release the county from the obligation of the contract guaranteeing payment for the rock furnished.

4. COUNTIES—*Contract of Guaranty by County—Sufficiency of Notice of Claim Under the Guaranty.*—A county guaranteed the payments for stone furnished road contractors by appellant for certain road work. Appellant, in May, 1914, notified the county that a bill for stone furnished a contractor in July and August, 1913, was then still unpaid, without expressly notifying the county that the appellant held it liable under its contract with him.

> *Held:* That this action did not release the county from the obligation of its contract of guaranty, in view of the fact that the contractor had been adjudged a bankrupt in August, 1913, and the county did not file its answer in the bankruptcy proceeding until October, 1914, in which answer the county did not set up its liability to appellant under the guaranty contract, although it might have done so, and might have had it allowed against the balance then in the hands of the county due the contractor.

Error to a judgment of the Circuit Court of Wise county on appeal from a decision of the board of supervisors. Judgment for defendant. Plaintiff appeals.

*Reversed, and final order entered.*

In this case there was an appeal to the circuit court by appellant from a decision of the board of supervisors of Wise county, disallowing a claim of appellant against the county for the amount of $2,425. A jury being waived, the case was submitted to the court upon the following agreed statement of facts:

"1. On or about the . . . . . . day of . . . . . . . . . ., 1911, the county of Wise entered in a very extensive enterprise of building in the said county a system of public roads, and to that end the county and the different districts thereof voted a bond issue of over one million dollars, which was subsequenty expended in the building of the said roads, the said system of roads being completed on or about the . . . . . day of . . . . . . . ., 1914, a very considerable portion of the whole

of the roads constructed, which was approximately 130 miles, having been constructed with limestone macadam, there being approximately forty-five miles of such construction.

"2. That the board of supervisors of Wise county duly appointed and employed one William Cocke as county engineer, to whom was given over, in large part, the preparation of forms of bids to be submitted to the board for the construction of various different sections of the said road construction, and the form of contract to be executed by the respective bidders when their bids should be accepted, and to produce for the county and, through it, the contractors, after they became such, limestone to be used by the contractors in the construction of the said sections of macadam road, and to procure, in advance of the letting of the contracts, the lowest bid that responsible producers of limestone material proper for the construction of such roads would give to the county.

"3. That, in pursuance of the authority thus conferred upon him by the board of supervisors of Wise county, the said William F. Cocke, county engineer, as aforesaid, wrote numerous letters to the end set out in the last preceding paragraph, and among which he, on the 7th day of August, 1911, wrote to the appellant a letter as follows:

" 'Norton, Va., August 7, 1911.

" 'Mr. J. S. Mackenzie,

" 'St. Paul, Va.

" 'Dear Sir:

" 'Your favor of August 5th received, and I, too, am surprised to note that the price of fifty cents per ton f. o. b. Quarry, Va., has already been made to Wise county, as I have known nothing of it before receiving your letter. As you say, this is a most satisfactory price, and I wish to express my appreciation of same to yourself and C. C. & O.

R. R. Co. of giving the contractor the benefit of this price, but I presume that this is the case. This, of course, with the understanding that the county guarantees to your company payment for the stone furnished. Please advise me by return mail if this is your understanding and if we may advertise that the contractor will be furnished with stone at fifty cents per ton f. o. b., also the minimum number of tons in any one contract for which stone will be furnished at this price.

> " 'Yours truly,
> " (Signed)    'Wm. F. Cocke,
> " 'County Engineer.'

"And that the following correspondence passed:

> " 'Johnson City, Tenn., August 12, 1911.
> " 'Mr. William F. Cocke,
> " 'County Engineer, Wise County,
> " 'Norton, Va.
> " 'Dear Sir:
> " 'In answer to the proposition contained in your letter of August 11th: I beg to advise that this company will deliver stone at fifty cents per ton of 2,000 pounds f. o. b. cars at our flag stop at Quarry, one and one-half miles south of St. Paul, with the understanding that stone delivered at this rate is to be used exclusively in the building of public highways in Wise county, Va., and the further proviso that Wise county will guarantee the payment for said stone.
> " 'Yours truly,
> " (Signed)    'M J. Caples,
> " 'Vice-President and General Manager.'

" 'Norton, Va., August 15, 1911.

" 'Mr. M. J. Caples,

" 'Vice-Pres. and Gen'l Mgr. C. C. & O. R. R.,

" 'Johnson City, Tenn.

" 'Dear Sir:

" 'Your favor of the 12th inst. received, and I note that you will allow us the privilege of making the price of fifty cents per ton on crushed stone f. o. b. Quarry flag stop, available to the contractors, with the understanding that the stone is to be used exclusively for Wise county highway work and that Wise county will guarantee payment for same.

" 'I will, therefore, publish in our "Instructions to Bidders" that stone may be had by contractors doing work on this Wise county highways at the above prices.

" 'Thanking you for your consideration and interest in our work, I am,

" 'Yours truly,

" '(Signed)    'Wm. F. Cocke,

" 'County Engineer.'

"4. That appellant was and is a corporation, organized and existing under the laws of the State of Virginia, and was and is engaged under its charter powers, principally, in the manufacturing and making out of limestone railroad ballast and limestone material proper for the construction of limestone macadam roads, one of its plants for the purpose of such manufacturing being on the Carolina, Clinchfield and Ohio Railway, in Russell county, Va., a short distance south of the town of St. Paul, in Wise county, Va., made to the county of Wise, through its said agent, William P. Cocke, the proposition to furnish limestone material for the construction of said roads in Wise county, or such parts thereof as the county might desire, at the price of fifty cents per ton f. o. b. cars at its said Russell county plant, as shown

in said letter above quoted, dated August 12, 1911, from M. J. Caples, appellant's vice-president and general manager.

"5. The said proposition which appellant submitted was accepted by the county of Wise, the county agreeing to guarantee payment for the price of said material, as shown in said letters above quoted from W. F. Cocke, appellee's agent and engineer, and, after having completed said arrangements in reference to limestone material and other preliminary arrangements, advertised extensively for bids for the construction of various sections of the then contemplated public roads in Wise county, and in the said advertisements for bids announced the price that the county had been able to procure for limestone macadam, being the price which appellant had submitted, as aforesaid, and which had been accepted by the county, as aforesaid.

"6. That, in pursuance of all of the above, one D. J. Phipps became a contractor, after having duly complied with all the requirements of the county and giving bond, etc., for the construction of two of the macadam sections of the said public road in Wise county, one locally designated as the Coeburn section and the other locally designated as the Wise section, and that in pursuance of the arrangement above stated, the appellant from time to time furnished to the said D. J. Phipps, contractor as aforesaid, limestone material for the construction of the said Coeburn section of said road, an itemized statement of which is hereto attached, marked 'A,' and that pursuant to the same arrangement the appellant furnished to the said Phipps, contractor as aforesaid, limestone material for the construction of the said Wise section of said public road, an itemized statement of which is hereto attached, marked 'B,' the aggregate of the two items for limestone material furnished said Phipps, contractor as aforesaid, being $2,425.00, said material being furnished as of the dates specified in said itemized accounts, and if appellant is entitled to recover,

interest on the claim should be allowed from September 21, 1915, till paid.

"7. That the said D. J. Phipps never paid for said limestone material, as set out in said two itemized accounts, or any part thereof, but, on the contrary, the whole of the amount set out in each of said itemized accounts is justly due and owing to the appellant.

"8. That the said D. J. Phipps, after the said material was furnished and delivered to him, to-wit, on August 28, 1913, was duly adjudged a bankrupt in the District Court of the United States for the Eastern District of Virginia, at Norfolk, and, although the claim of appellant against him was duly presented and proved and allowed in the said bankruptcy proceeding, it is now developed and is a fact that appellant will be unable to procure anything upon its claim against said D. J. Phipps out of his assets, said assets not being sufficient to pay the costs of the bankruptcy proceedings and certain preferred claims, and so far as D. J. Phipps is concerned, the claim of appellant is a total loss, the said Phipps being totally insolvent, and any further liability against him barred by his discharge in bankruptcy.

"9. That after Phipps became a contractor for a portion of said road work, consisting of two sections thereof, to be constructed of limestone macadam, one locally designated as the Coeburn section, and the other locally designated as the Wise section, as aforesaid, and prior to the time the limestone macadam included in this controversy was furnished, and, in pursuance of the understanding between appellant and the appellee, set forth in the correspondence hereinabove set forth, the appellant from time to time furnished to the said D. J. Phipps, contractor, as aforesaid, limestone material which was used by the said Phipps in the construction of said sections of road up until the month of November, 1912, at which time the said Phipps

was indebted to appellant for said limestone material to
the amount of $4,351.23; that at that time the appellant
and the said Phipps became involved in a controversy in
regard to the said account; that the appellant notified the
board of supervisors of Wise county of the fact that the
said Phipps was indebted to appellant in the amount above
stated; that the said county was then indebted to the said
Phipps on account of work done under his said contract
to the amount of $4,239.95, which said amount the said
board held pending the adjustment of the said controversy
between appellant and the said Phipps; that appellant dis-
continued shipments of said limestone material to the said
Phipps until after the 2nd day of May, 1913, at which said
date the appellant and the said Phipps agreed upon an ad-
justment and compromise of their differences, said adjust-
ment being evidenced by a written contract between them,
a copy of which is hereto attached marked 'Contract;' that
thereafter, on the 9th day of May, 1913, when the said
board of supervisors was in session, an attorney of said
D. J. Phipps appeared before the said board and exhibited
to the board the said contract, and informed the said board
that the matters of difference between appellant and the
said Phipps had been adjusted, and that the said board was
at liberty to pay over to the said Phipps the amount owing
to him by said county, and that thereafter the appellant
resumed shipments of limestone material to the said Phipps,
contractor as aforesaid, and furnished to the said Phipps
from time to time, for the construction of the said road,
limestone material, as set forth in section six (6) thereof.

"10. On or about the 10th day of September, 1916, after
the development of the facts as above set forth as to the
bankruptcy and insolvency of the said D. J. Phipps, appel-
lant presented its said claim to the board of supervisors of
Wise county for allowance, and the board then took time
to consider of the same, and on the 21st day of September,

1916, at a special meeting, passed upon the said claim and disallowed it entirely, and from this decision of the board the appellant duly matured its appeal, which is now to be determined by the court.

"11. That the appellants never gave to Wise county any notice of its account against the said Phipps, nor requested the said county to withhold payment to said Phipps of any amount due said Phipps by said county for the purpose of applying the same on appellant's said claim against said Phipps, until after the said Phipps had become insolvent and had been adjudged a bankrupt, except as appears from order of the board of supervisors, dated May 12, 1914, as follows:

" 'Virginia: At a regularly adjourned meeting of the board of supervisors begun and held for Wise county at the courthouse thereof on the 12th day of May, 1914. Present—Hon. E. J. Prescott, J. L. Addington, Wilburn Sparks and Ira Mullins, gentlemen members of said board.

" 'The board hereby admits having received notice this day by Holston Corporation of the furnishing by said Holston Corporation to D. J. Phipps, sub-contractor under T. Towles & Co., contractors for the macadam work at Coeburn and vicinity, the items of which claim for stone furnished are as follows:

" 'July 21, 1913, 27 Cars of stone....... $   675.00
July 21, 1913, 3 cars of stone........      75.00
July 31, 1913, 14 cars of stone.......     350.00
August 2, 1913, 2 cars of stone......      50.00
August 8, 10 cars of stone...........     250.00
August 14, 6 cars of stone..........     150.00

    Total  .........................  $1,550.00

" 'And the board also acknowledged having received notice by said Holston Corporation of the furnishing of crushed stone by the said Holston Corporation to D. J. Phipps, contractor of the county, for the construction of the macadam roads in and about Wise, the items as follows:

" 'July 21, 1913, 19 cars of stone........ $  475.00
　　July 31, 1913, 17 cars of stone....... 　 425.00
　　August 2, 1913, 1 car of stone....... 　　 25.00
　　August 8, 1913, 5 cars of stone...... 　　125.00
　　August 14, 1913, 5 cars of stone..... 　　125.00
　　August 25, 1913, 16 cars of stone..... 　　400.00

　　　　Total .......................... $1,575.00

" 'That of the said accounts for stone furnished D. J. Phipps, sub-contractor as aforesaid, for macadam work at Coeburn and vicinity, there should be a deduction amounting to five cars, $125.00; and that of the said account for stone furnished D. J. Phipps, contractor as aforesaid, for macadam work at Wise and vicinity, there should be a reduction of twenty-three cars, amounting to $575.00, the said reduction being for cars that, for one reason or another, did not reach the said Phipps.

" 'A copy—Teste:

" 'W. B. Hamilton, Clerk.'

"On which date there remained unpaid on account of said work more than $2,425.00, but this was claimed by and afterwards adjudged to belong to parties other than appellant, by the said bankruptcy court, but appellee, in answer filed October 27, 1914, made no mention of appellant's claim, nor did appellant file any petition or other pleading in said bankrupt court asserting any specific claim to said particular fund.

"12. The foregoing are the facts and all the facts that are material to the determination of this controversy.

"13. The parties hereto waive a jury, and upon the foregoing agreed statement of the facts submit the whole controversy upon the law, as well as the facts, to the court for its determination, each party reserving the right to except to the final judgment of the court, and if so advised, to apply to the Supreme Court of Appeals for a writ of error to the judgment entered.

"Witness the following signatures this the 18th day of March, 1919.

"E. M. Fulton,

"Attorneys for Appellant, Holston Corporation.

"C. R. McCorkle,

"Attorneys for Appellee, Wise County."


"A.


"Statement of crushed limestone delivered by Holston Corporation to D. J. Phipps for construction of section of macadam road at Coeburn, Va.

| | |
|---|---:|
| "July 21, 1913, 27 cars of stone........ | $ 675.00 |
| July 21, 1913, 3 cars of stone........ | 75.00 |
| July 31, 1913, 14 cars of stone....... | 350.00 |
| August 2, 1913, 2 cars of stone....... | 50.00 |
| August 8, 1913, 10 cars of stone..... | 250.00 |
| August 14, 1913, 6 cars of stone...... | 150.00 |
| Total ........................ | $1,550.00 |
| Less 5 cars not delivered........... | 125.00 |
| Balance ...................... | $1,425.00 |

## "B.

"Statement of crushed limestone delivered by Holston Corporation to D. J. Phipps for construction of section of macadam road at Wise, Va.:

| | |
|---|---:|
| "July 21, 1913, 19 cars of stone....... | $  475.00 |
| July 31, 1913, 17 cars of stone....... | 425.00 |
| August 2, 1913, 1 car of stone........ | 25.00 |
| August 8, 1913, 5 cars of stone...... | 125.00 |
| August 14, 1913, 5 cars of stone...... | 125.00 |
| August 25, 1913, 16 cars of stone..... | 400.00 |
| Total ......................... | $1,575.00 |
| Less 23 cars not delivered........... | 575.00 |
| Balance ....................... | $1,000.00" |

## "CONTRACT.

"This agreement, made and entered into this 2nd day of May, 1913, by and between Holston Corporation, a corporation organized and existing under the laws of the State of Virginia, hereinafter called the 'Company,' party of the first part, and D. J. Phipps, of Norfolk, Va., hereinafter called the 'Contractor,' party of the second part.

"Witnesseth: Whereas, the parties hereto desire (2) to settle and compromise a controversy respecting a claim for damages asserted by the contractor against the company arising from the alleged failure of the company to deliver to the contractor certain crushed stone, during the years 1911-12 and until this date, which stone was to be used in the construction of county highways in Wise county, and (b) to enter into a new contract for the sale of crushed stone by the company to the contractor to be used by the

contractor in the construction of county highways in Wise county, Va., in lieu of said contract now existing.

"Now, therefore, in consideration of the premises and of the agreements hereinafter set forth, and of other valuable considerations, it is agreed by and between the parties hereto as follows:

"(1) That the said claim for damages is hereby settled and compromised as follows: The contractor agrees to pay the sum of fifteen hundred dollars ($1,500.00), and the company agrees to accept.that sum in full settlement of the amount now due by the contractor to the company, which amount is the sum of four thousand three hundred fifty-one and twenty-three hundredths dollars ($4,351.23), and the contractor hereby releases and discharges the company and its predecessors and affiliated persons and corporation from any and all claims for damages arising out of the said transaction respecting the said crushed stone.

"(2) The company agrees to furnish from its quarry crushed stone to the amount and of the character herein specified and to deliver the same to the contractor f. o. b. cars at its plant at Quarry, Russell county, Va., in such quantity and such times as are required under this agreement, unless prevented by strikes, lockouts, fires, floods, car-famines, unforeseen breakdowns or other causes beyond its control.

"(3) Based upon its present plant facilities and equipment, the company agreed: (a) That it will use all reasonable efforts to produce crushed stone that shall satisfy the specifications required for crushed stone in the contract between Wise county and the contractor, and (b) that it will use all reasonable effort to deliver the said crushed stone of the class and quality and in the proportions that may be reasonably necessary to enable the contractor to prosecute his construction work under his said contract economically. It is understood, however, that the classes

and proportions of stone are governed by the character of the rock recovered from the quarry, and that, therefore, the class and proportion will vary within limits from day to day. Should the company fail to comply with the requirements of this clause, or if the contractor for any reason hereafter desires to do so, then he shall have the right to cancel this contract by giving the company forty-eight (48) hours' notice of his intention so to do without liability for damages hereunder.

"(3) The period through which said stone is to be furnished is from the 12th day of May, 1913, until December 1, 1913, unless the contractor desires to terminate the delivery of stone hereunder before that time, and if he does so desire, then he can do so at any time he so desires by giving the company forty-eight hours' notice of his desire so to do.

"(5) The said crushed stone shall be delivered at the rate of four (4) cars per day, excluding Sundays, holidays and days on which weather conditions prevent the operation of said quarry. The company is willing, if it can do so with due regard to its obligations and commitments to the Carolina, Clinchfield and Ohio Railway, to ship more than said four cars per day, but shipment in excess of four cars per day shall be discretionary with the company.

"(6) For said crushed stone delivered at its quarry at Quarry, Va., in accordance with the terms and conditions of this contract, the contractor agrees to pay, and the company agrees to accept in full payment therefor, the sum of fifty cents per ton of two thousand (2,000) pounds, railway weight to govern.

"(7) Payments for crushed stone shall be made to the company at Johnson City, Tenn., on or before the 15th day of each month for all stone delivered during the preceding month, based upon invoices, and the contractor agrees that Wise county may, if the company so elects, retain from any

amounts due or to become due him, and pay over to the company on said date each month an amount equal to said invoice price of said stone to be shipped during the preceding month. Should the contractor fail to settle for any one month as herein provided, then the company may, at its election, declare this contract forfeited, and thereafter the company shall be held released from its obligations.

"(8) Upon final settlement, the difference, if any, between the price of the said stone at invoice weight and railway weight shall be adjusted.

"Witness the signature of the Holston Corporation, by its president, and its corporate seal attested by its secretary, and the signature and seal of the party of the second part to this agreement, in duplicate, this the day and date first above written.

"Holston Corporation,
"By Mark W. Potter, President.
"Attest:
"Jno. A. Muse, Secretary.

"D. J. Phipps.    (Seal)"

The circuit court, by the order under review, dismissed the appeal, which had the effect of sustaining the action of the board of supervisors in disallowing the claim.

*E. M. Fulton,* for the plaintiff in error.

*C. R. McCorkle* and *Jno. W. Chalkley,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented to us for decision by the assignments of error will be disposed of in their order as stated below.

[1] According to the agreed statement of facts, the contract in question was made directly between the county and appellant before it had advertised for bids of contractors for the road work, and the contract was that the appellant would furnish the crushed stone to any and all contractors to whom the road work was subsequently let, to be used for the road work for the county at the special price to the contractors of "fifty cents per ton f. o. b. Quarry flag stop available to the contractors," and in consideration of such furnishing of the stone for such use at such price the county, on its part, guaranteed to the appellant payment for the same.

1. Does such contract fall within the inhibition of section 185 of the Constitution of Virginia?

This question must be answered in the negative.

Section 185 of the Constitution of Virginia, so far as material, reads as follows:

"Neither the credit of the State, nor of any county  *   * shall be directly or indirectly, under any device or pretence whatsoever, granted to or in aid of any person, association or corporation  *   *   *."

The contract in question did not directly or indirectly in any way whatsoever grant "the credit" of the county "to or in aid of any person, association or corporation." That would have been true if the object of the contract had been to benefit the contractors in any way, as, for example, to enable any of them to obtain the stone on the credit of the county, when upon their own credit they could not have obtained it; or to enable any of the contractors to make a greater profit by obtaining the stone at a reduced price because of the pledge of the credit of the county. But the contractors were not expected and could not in the nature of the case derive any benefit from the contract, and it was not made for their benefit. It was made solely for the benefit to the county itself, and not for or in aid of any

other. The benefit to the county was that the bids of the contractors for the road work would embrace the item of the cost of the stone at the fixed price mentioned, so that nothing would be added thereto because of the possible fluctuation in price or of inability to obtain the stone at that price; and hence it was expected by the county that by reason of such contract with appellant it would receive a direct benefit in obtaining contracts with the contractors for the road work for a less total contract price than could have been otherwise secured. And doubtless this was the result. But whether it was or not, this expected benefit to the county was the sole reason for its making the contract with appellant, and hence the credit of the county was used by itself and for its own benefit alone.

*Lynchburg, etc., Ry. Co.* v. *Dameron,* 95 Va. 545, 28 S. E. 951, is relied on by appellee as a holding contrary in principle to the conclusion which we have reached above. We do not so construe that case. The controlling principle upon which that case was decided is that a municipal corporation cannot, under legislative authority merely to make contracts of its own, for its own benefit, become the surety for another corporation or individual for the benefit of the latter, although the municipality may indirectly be benefited thereby, for the reason that such benefit is indirect and uncertain. Whereas, where the contract is authorized and made by the municipality directly for its own benefit, and not at all for the benefit of another, "the avails or consideration" for the contract cannot be diverted to any illegitimate purpose. The latter, precisely, is the situation with respect to the contract involved in the instant case, and hence it is apparent the case last cited has no application to the case now before us.

[2] 2. Is the contract aforesaid made by its engineer and board of supervisors binding upon Wise county?

This question must be answered in the affirmative.

The county, under chapter 47, Acts 1910, page 62, unquestionably had the authority to make such contract through its board of supervisors. According to the agreed statement of facts, the county, through its board of supervisors, ratified and approved the action of the engineer in undertaking to act for the county in making the contract with the appellant; and the county subsequently, through action authorized by the board of supervisors in advertising for bids of contractors and in securing the contracts for the road work at figures embracing those for the stone obtained by means of the contract with appellant, accepted the benefit of the latter contract. It is, therefore, immaterial whether originally the engineer did or did not exceed his authority. The county cannot at the same time approbate and reprobate. It cannot at the same time hold the benefit of and repudiate the contract.

[3] 3. Did the second contract entered into between D. J. Phipps and appellant (which alone appears in the record), subsequently to the contract aforesaid between the county and appellant, operate to release the county from the obligation of the contract with appellant?

This question must be answered in the negative.

The contract of the county with appellant was not limited in its operation to stone furnished to Phipps under any particular collateral contract of appellant with him; nor, indeed, to stone furnished to any particular contractor. The contract with appellant embraced all the stone which appellant might supply to any and all contractors for use in the road work in and for the county of Wise embraced in the road-building undertaking of the county mentioned in the agreed statement of facts, under any and all contracts of appellant with such contractors covering the furnishing by appellant to them of the stone at the price stipulated as aforesaid. Further, the second agreement aforesaid in no way operated to increase the liability of the county under its contract with appellant, and so was of no detriment to the county.

For these reasons, we are of opinion that the second agreement with Phipps did not operate to release the county from the obligation of its contract with appellant.

[4] But one other question remains for our consideration, and that is this:

4. Was the action of appellant in merely notifying the board of supervisors of the county on May 12, 1914, that the bill for stone it furnished Phipps in July and August, 1913 (which amounted to $2,425.00, at the price stipulated in the contract between the county and appellant), was then (May 12, 1914) still unpaid, without expressly notifying the county that the appellant held it liable under the contract with him aforesaid, such action as released the county from the obligation of such contract, in view of the fact that Phipps had been adjudged a bankrupt on August 28, 1913, and the county did not file its answer in the Phipps bankruptcy proceeding until October 27, 1914, in which answer the county did not set up its liability to appellant under said contract with him, but might have done so and (as is admitted in argument before us for the county) might have had it allowed against the balance then in the hands of the county due Phipps which was in excess of said $2,425.00 claim? Whereas, not having done so, the county was required to pay and did pay such balance over into the hands of the trustee in bankruptcy.

This question, too, must be answered in the negative.

We think that in view of the fact that Phipps was adjudicated a bankrupt in August, 1913, the notice nine months thereafter which was given by appellant to the board of supervisors of the county of the amount still due him and unpaid for the stone, which the board of supervisors knew appellant had furnished in accordance with his contract with the county, was sufficient notice to the county that the appellant claimed that the county was liable therefor under its contract with appellant. The notice

could have had no other purpose or meaning, since Phipps was then and had been for nine months a bankrupt with all of his assets under the control of the bankrupt court. The notice to the county, under such circumstances, could not have meant that appellant was looking to Phipps for payment independently of the money the county had in hand to the credit of Phipps. And it could not have meant that the appellant looked to the county to distribute the balance in its hands due Phipps, since the bankrupt court alone had jurisdiction to do that. There was nothing in the conduct of the appellant, therefore, which justified the county in concluding that the appellants made no claim against the county under his contract with it. Hence, we think there is no merit in the claim of the county that it was misled by such conduct and for that reason failed to subsequently protect itself by the aforesaid course which it might have taken when it filed its answer in bankruptcy. The county all along knew or should have known what was the obligation of its contract with appellant. On and after May 12, 1914, it knew that the $2,425.00 due appellant for stone furnished by appellant under the contract with the county had not been and would not be paid by Phipps, and it knew that the only course it could pursue in order to save itself harmless from liability upon its contract obligation to appellant was to obtain leave from the bankrupt court in the Phipps bankrupt proceedings to retain out of the fund in its hands the amount of its liability to appellant. This it neglected to do, through no fault of appellant so far as we can see from the agreed statement of facts in the record.

The order under review must, therefore, be reversed, and this court will enter an order in favor of the appellant for the $2,425.00 amount of its claim, with interest thereon from May 12, 1914, and with costs.

*Reversed, and final order entered.*