# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY V. BOARD
OF SUPERVISORS OF SHENANDOAH COUNTY.

January 14, 1946.

Record No. 2980.

Present, All the Justices.

The opinion states the case.

F. S. *Tavenner, Sr.,* and F. S. *Tavenner, Jr.,* for the appellant.

R. *Gray Williams,* J. *Sloan Kuykendall* and R. S. *Wright, Jr.,* for the appellee.

Holt, J., delivered the opinion of the court.

The Massanutten National Bank of Strasburg was named as trustee in the will of Mrs. Lucy E. Stickley. Among properties which passed under its control was an eleven-acre lot in the town of Strasburg. The County School Board of Shenandoah County planned to build a high school and was casting about for a suitable location. This eleven-acre lot seemed to meet its requirements, and it took up with said trustee the possibility of its purchase. Tentatively, a price of $8,000 was agreed upon.

The trustee on October 18, 1938, filed its bill in the Circuit Court of Shenandoah County, asking that the will of Mrs. Stickley be construed and that it be given judicial advice in the administration of its trust. In that bill is stated its dealings with the School Board and the price which they had agreed upon. Testimony was taken. The court by

decree of November 12, 1938, approved the contemplated sale of this property to the School Board at the price of $8,000 and appointed R. S. Wright, Jr., special commissioner, who upon the payment of $8,000 to him in cash was to execute and deliver a deed to it. The Board of Supervisors was unwilling to pay $8,000, and by resolution of date February 9, 1939, offered to Wright, special commissioner, the sum of $6,000 to be used for that purpose. This $6,000 being unacceptable, the Board of Supervisors by resolution of date June 5, 1939, authorized and directed the School Board to purchase this property and to tender to Wright, commissioner, the sum of $7,000, provided a marketable title could be secured. Its resolution, in part, reads:

"Now, therefore, be it resolved: That the Board of Supervisors of Shenandoah County does hereby ratify, approve and confirm the purchase of the said real estate for the sum of Seven Thousand Dollars ($7,000.00) cash; * * * "

At that meeting in its minutes this further appears:

"Be it further resolved: That the Board of Supervisors of Shenandoah County does hereby authorize and direct the County School Board of Shenandoah County to offer to purchase and to tender to R. S. Wright, Jr., special commissioner in the aforesaid chancery cause, a bid in the amount of Seven Thousand Dollars ($7,000.00) cash for said real estate, provided a marketable title to said real estate can be obtained; and the County School Board of Shenandoah County is hereby authorized to take all such actions and proceedings as may be necessary and proper to carry into effect the purchase of the said real estate for the said sum of Seven Thousand Dollars ($7,000.00) cash, if said bid is accepted, * * * "

On October 3, 1939, the School Board approved and accepted all that the Board of Supervisors had done. On the same day the School Board "does hereby tender and offer the sum of Seven Thousand Dollars ($7,000.00) in cash for the real estate described." Commissioner Wright, after

reciting all that had been done, concluded his report with this recommendation:

" * * * the said County School Board of Shenandoah County has tendered its bid in writing for said real estate in the sum of Seven Thousand ($7,000.00) cash, said bid being dated the 3rd day of October, 1939, and being returned to the court herewith; and that the undersigned special commissioner, therefore, respectfully recommends that the said bid of the County School Board of Shenandoah County in the sum of Seven Thousand Dollars ($7,000.00) cash be confirmed, and that the undersigned special commissioner may be authorized and directed to prepare, execute, acknowledge for record, and deliver to the said County School Board of Shenandoah County a deed conveying said real estate, with special warranty of title, immediately upon payment to him of the said sum of Seven Thousand Dollars ($7,000.00) in cash."

The decree of date October 5, 1939, after reciting much that had gone before, has in it this statement:

"It is, therefore, hereby adjudged, ordered and decreed that the sale of the real estate in the bill and proceedings mentioned to the said County School Board of Shenandoah County, for the purposes mentioned in the bill of complaint, for the said sum of Seven Thousand Dollars ($7,000.00) in cash, be, and the same is hereby authorized and directed; and it is further adjudged, ordered and decreed that the said R. S. Wright, Jr., heretofore appointed special commissioner, upon the payment to him of the sum of Seven Thousand Dollars ($7,000.00) in cash, shall thereupon, as a special commissioner of this court, for that purpose heretofore appointed, prepare, execute, acknowledge for record, and deliver to the School Board of Shenandoah County, or to whomever they shall designate, a deed conveying said dwelling house and lot, with special warranty of title * * * "

Wright, special commissioner, executed a deed on November 20, 1939, for this property and tendered it to the Superintendent of Schools on November 21, 1939, but it was not accepted by him. On December 5, 1939, this deed was

tendered by the commissioner to the School Board. It was not accepted; its acceptance was impossible. It was to be paid for cash on delivery, $7,000. The School Board had no money with which to pay for it and no power to levy taxes, but it did on that day by resolution call upon the Board of Supervisors to pay this $7,000 purchase price which it had promised to pay.

Afterwards, on December 11, 1939, a decree was entered directing that the School Board appear and show cause why it should not pay the $7,000 agreed upon. To this rule the School Board demurred, moved to quash and answered. The reason why the deed tendered on December 5, 1939, was not accepted appears in this excerpt from the answer to that rule:

"Respondent accordingly, at a meeting regularly held, unanimously passed a resolution authorizing the tendering of a bid to R. S. Wright, Jr., special commissioner, of Seven Thousand Dollars ($7,000.00) cash for the said real estate, expressly reciting that the proposal was in pursuance to authority and direction of the Board of Supervisors provided and contained in resolution adopted by that board on the 5th day of June, 1939. This resolution was adopted on the 3rd day of October, 1939, and is set out at length and filed in the record of this cause. * * *

"Respondent has not rescinded its resolutions heretofore made or action taken, and is still willing to go forward in accordance with its bid in the event that it can legally, and if it is possible, to do so under the resolutions of the Board of Supervisors and this respondent, to which reference is hereinabove made.

"But unless the Board of Supervisors can be required by proper legal procedure to complete the purchase, an impossible situation is developed."

On January 8, 1940, an order was entered directing the Board of Supervisors to appear and show cause why it should not be compelled to furnish the necessary funds to meet payment promised for the purchase of this lot. It appeared, filed a demurrer, a motion to quash and an answer. The

answer itself contains ten reasons relied upon to defeat any claim against itself. By the same decree Hon. Philip Williams, Esq., was ordered to report upon the title. He filed his report on February 1, 1940, in which he held that the court had power to confirm the $7,000 sale, provided the necessary parties were before the court, but that the collateral relatives of Lucy E. Stickley had a contingent interest in it and should be brought before the court. To that report six citizens appeared and protested, whereupon the court entered on March 11, 1940, this order:

" * * * it is, therefore, adjudged, ordered and decreed that said petition be, and the same is hereby filed, and said motion for an appeal from the decision of the said Philip Williams, Esquire, Attorney, in disapproving the title to the said real estate, is hereby sustained, but the court doth not now rule upon said motion and said petition, and doth hereby continue the hearing of the same to Monday, the 11th day of March, 1940."

No action was taken on this protest or these rules until September 1, 1944, when the rules were dismissed. Following the dismissal it decreed that "the said Board of Supervisors and School Board of Shenandoah County shall recover their costs against the complainants in this behalf expended."

On January 1, 1941, the court permitted an amendment to the bill bringing in these collateral relatives.

Mr. Wright, counsel for the trustee bank, has, with Ithuriel's spear, touched the heart of this litigation and the source of all its troubles:

"As a matter of fact, the delay in the termination of this litigation by a sale of the property to the County School Board of Shenandoah County was from the time of the institution of the chancery suit pending in the Circuit Court of Shenandoah County on or about the 18th day of October, 1938, until the 4th day of January, 1941, occasioned by first the reluctance and/or failure of the Board of Supervisors of Shenandoah County to furnish the County School Board of Shenandoah County with funds to pur-

chase the said lot, and, secondly, by the efforts of the said Board of Supervisors of Shenandoah County to be released from their authority and direction to the County School Board to purchase the property, as set forth in the resolution of the Board of Supervisors of June 5, 1939."

The Board of Supervisors may be justly charged with rue-bargain.

First it is said: "Neither the School Board of Shenandoah County, nor the Board of Supervisors of Shenandoah County was made a party to this suit."

▉ One of the purposes of this suit was to obtain the approval of the court on the tentative offer made by the School Board. The court held that the trustee had power to sell and approved of the acceptance of that offer. Afterwards the School Board made another offer, which also met with approval. This brought the School Board before the court (*French* v. *Phipps*, 171 Va. 133, 198 S. E. 458) and gave the court the power to proceed by rules or in a more summary manner if it so desired. *Hurt* v. *Jones*, 1 Matthews (75 Va.) 341. Moreover, in the decree of September 1, 1944, it gave the School Board judgment for costs.

▉ Plainly one who is not a party to a suit could not be given a judgment for money.

Did the Board of Supervisors make itself a party?

On February 9, 1939, this resolution was unanimously adopted by it:

"Resolved that this Board offer to R. S. Wright, Jr., special commissioner, in the chancery cause of *Massanutten Bank of Strasburg, and others* v. *Lucy Ellen Spiker and others*, the sum of Six Thousand ($6,000.00) Dollars, for the real estate described in the bill and proceedings as Lucy E. Stickley, property, situated, lying and being in Davis Magisterial District, and in the Town of Strasburg, and containing ____ acres, providing that a marketable certificate of title can be furnished.

"Be it further resolved that the chairman of this Board is authorized and delegated to submit to R. S. Wright, Jr.,

special commissioner, a written bid in accordance with this resolution."

And later it "authorized and directed the School Board" to buy this property in. It appeared in answer to the rule against it, and when the court declined to dismiss this cause, holding that it had general equity jurisdiction, it earnestly protested, assigning several reasons. It, too, obtained a judgment for costs in the decree of September 1, 1944.

It is likewise plain that the Board of Supervisors is a party to this litigation, and they would be parties had no rule ever issued against them.

When the Board of Supervisors "authorized and directed the School Board" to bid $7,000 for this lot, it made the School Board its agent, and even if this be not true, both of these Boards were acting in concert in an effort to buy a site for this high school building which everybody then seemed to desire. And beyond that, the Board of Supervisors having promised the School Board that they would furnish the necessary purchase money, we are but putting the saddle on the right horse.

Not only were both of these Boards parties to this suit, but they voluntarily made themselves parties.

For seven years, the School Board has sought in vain to have the Board of Supervisors comply with its promise and while under the decree of September 1, 1944, it can still buy the lot in question, provided the Board of Supervisors will cooperate with it, there is no reason to believe that its cooperation will be more cordial than it has heretofore been. Moreover, from the trustee's brief it is fairly certain that it would have to pay more than the $7,000 provided for in the contract which it seeks to enforce in this suit.

The School Board is charged with the duty of erecting necessary school buildings (Code, section 656) while the Board of Supervisors is charged with raising the necessary funds (Code, section 698a) to be paid out of a levy or "in lieu of making such school levy, the board of supervisors in the counties and the councils of cities may, in their discretion, make a cash appropriation from the general

county or general city levy of an amount not less than the sum required by the county or city school budget provided by section six hundred and fifty-seven, approved by the board of supervisors of the county or council of the city in no event to be less than the amount which would result from the laying of the minimum school levy authorized by this section for the establishment, maintenance and operation of the schools of such county or city, without the express permission of the State Board of Education. In addition to this, the board of supervisors of any county, or the council of any city, may appropriate from any funds available such sums as in the judgment of such board of supervisors of such county or council of such city may be necessary or expedient for the establishment, maintenance and operation of the public schools of such county or city * * * ." *Board of Supervisors* v. *County School Board*, 182 Va. 266, 28 S. E. (2d) 698.

This is not a claim or demand against the county covered by Code, section 2765, which reads:

"No action shall be maintained by any person against a county upon any claim or demand until such person shall have first presented his claim to the Board of Supervisors of such county for allowance."

Nor by Code, section 2759. It would be a vain thing for the Attorney for the Commonwealth to appear before the board of supervisors to protest a contract which that board had already made and which had been confirmed by the court.

The board of supervisors may be sued in relation to matters connected with their duties. Code, section 2710.

The Board of Supervisors, as we have seen, made an unconditional offer to purchase on February 9, 1939; on June 5, 1939, by resolution, it "does hereby authorize and direct the County School Board of Shenandoah County to offer to purchase and to tender to R. S. Wright, Jr., special commissioner in the aforesaid chancery cause, a bid in the amount of Seven Thousand Dollars ($7,000.00)," and by unanimous resolution adopted on October 3, 1939, the

School Board recognized and adopted the resolution of the Board of Supervisors of June 5, 1939, authorizing and directing it to make said purchase.

We are not dealing with a claim against the county but with an effort to make the Board of Supervisors live up to its agreement. It is a party to this cause and the court has ample power to enforce it. *Hurt* v. *Jones, supra,* and *French* v. *Phipps, supra.*

In *Robertson* v. *Smith*, 94 Va. 250, 26 S. E. 579, 64 Am. St. Rep. 723, the court said:

"By bidding he subjects himself to the jurisdiction of the court, and in effect becomes a party to the proceedings in which the sale is made, and may be compelled to complete his purchase by the process of court. *Brent* v. *Green*, 6 Leigh (33 Va.) 16, 24, 25; 2 Lomax's Dig. 43 (side page 33); 2 Minor's Inst. (4th Ed.) 857; *Andrews* v. *O'Mahoney*, 112 N. Y. 567, 20 N. E. 374; *Warfield* v. *Dorsey*, 39 Md. 299, 17 Am. Rep. 562; Reed on Statute of Frauds, secs. 304, 305; Brown on Statute of Frauds (5th Ed.), sec. 265."

It is meet and right that claims presented to the Board of Supervisors for payment should be scrutinized with care, and it is very meet and right that the Attorney for the Commonwealth should require strict proof of those that are doubtful. But no board, whether it be of supervisors or of others, *ex mero motu* can repudiate a lawful undertaking which it had theretofore assumed.

Being a party to this cause, the court might have proceeded to enforce this agreement, either summarily or by rules.

The Board of Supervisors on its merits has assigned no valid reasons for its failure to comply with its agreement. Just why it is unwilling to pay for this land necessary in the development of the public schools of Shenandoah County at a sum less than its present value does not appear.

*Reversed and remanded.*

Gregory, J., dissenting.