## CIRCUIT COURT OF FAUQUIER COUNTY

SPR Corporation

v.

Fauquier County

### Case No. (Chancery) CH90-300

By JUDGE JAMES H. CHAMBLIN

October 2, 1990

This cause came before the Court on September 25, 1990, for argument on the following:
1. The Demurrer of the County of Fauquier to the Bill of Complaint for Declaratory Judgment and Specific Performance filed by the plaintiff, SPR Corporation.
2. The County's Motion to Strike Plaintiff's Motion for Summary Judgment.

After hearing the argument of counsel, the Demurrer was taken under advisement. For reasons stated from the bench, the Motion for Summary Judgment was deemed premature. However, the Motion may remain in the file, and SPR may

ask the Court to act on it at any time after the parties are at issue provided SPR gives the County notice of the specific grounds for which summary judgment may be requested.

For reasons hereinafter set forth, the Demurrer is overruled.

Prior to argument on September 25, 1990, SPR nonsuited Count III of the Bill of Complaint. Count III requested that the Court find the County in default, enter judgment against it in the amount of $855,665.52 and order the County to pay liquidated damages in the same amount. SPR has the right to such a nonsuit under Virginia Code Section 8.01-380. After the nonsuit, only the relief requested in Counts I and II of the Bill of Complaint remain viable. The first count, designated as "Count I - Specific Performance," requests an order of this Court:

(A) requiring the County forthwith to perform the solemn obligations set forth in the contract between the parties dated June 23, 1989 (the "contract") requiring appropriation and amendment to its budget to the extent that the County will actually obtain, set aside and designate in the general fund the sum of $855,665.52;

(B) requiring the county to obtain forthwith the right-of-way from the Rescue Squad and, if the Rescue Squad refuses, the County be ordered to obtain the right-of-way by condemnation; and

(C) requiring the County to comply with the payment of terms of the lease with SPR and ordering the County to pay $71,305.46 plus $10,695.82 for each month and every month beginning September 1, 1990, that it is in default under the lease with SPR.

The second count, designated as "Count II - Declaratory Judgment," requests an order of this Court declaring that SPR has the right to receive rental payments under its lease with the County whether or not the County has provided the Rescue Squad right-of-way.

Because this cause is currently before the Court on demurrer, the allegations of the Bill of Complaint are considered pursuant to the well-settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. *Fox v. Curtis*, 236 Va. 69 (1988). The

County's Demurrer has two grounds, and each is addressed below.

1. *Failure of SPR to allege that it complied with the requirements of Virginia Code Section 15.1-550 et seq.*

Virginia Code § 15.1-554 provides:

No action shall be maintained by any person against a county upon any claim or demand until such person shall have first presented his claim to the board of supervisors of such county for allowance . . .

The Bill of Complaint does not allege that SPR first presented its claim to the board of Supervisors of Fauquier County (the "Board"). Virginia Code § 15.1-550 through 15.1-554 provide the procedure for presentation, auditing, challenging, defense and judicial review of *monetary* claims against a county. *Nuckols v. Moore*, 234 Va. 78 (1987); *County School Board v. Supervisors*, 184 Va. 700 (1946). The requirements of the foregoing statutes are applicable regardless of the form of the action employed. *Nuckols*, 234 Va. at 481; *Fidelity and Deposit Co. v. Gill*, 116 Va. 86 (1914). Failure to allege compliance with the statutes requires a dismissal on demurrer. *Chesterfield v. Town and Country Apts.*, 214 Va. 587 (1974); *Fidelity and Deposit Co. v. Gill, supra.*

The County asserts that the relief requested by SPR (including the nonsuited Count III) involves monetary claims or demands, thereby making compliance with the statutes referred to above a necessary prerequisite to any suit against it. SPR argues that it is not making a monetary claim or demand against the County but is merely a suit to require the Board to live up to its agreement as set forth in the contract of June 23, 1989, and the deed of lease of the same date. Also, SPR argues that the County has by its actions waived the requirements of the statute.

When SPR nonsuited Count III; it removed from the suit a monetary claim against the County for damages. *Cf., Nuckols*, 234 Va. at 482.

However, the issue still remains of whether Count I or Count II, or both, represent a monetary claim against the County.

At oral argument, counsel for SPR stated that it was only asking that the Court order the County to convey the rescue squad right-of-way required by paragraph 18 of the contract and appropriate the funds to cover the liquidated damage provisions as set forth in paragraphs 11 and 13 of the contract and paragraphs 4 and 7 of the deed of lease. However, an examination of the relief actually requested in Counts I and II of the Bill of Complaint will readily show that SPR's counsel has, giving him the benefit of the doubt, either over-simplified or partially stated the relief sought. At the end of oral argument, SPR withdrew its Motion to Amend Complainant's Bill of Complaint filed September 24, 1990. Therefore, for purposes of deciding the issues raised on the County's Demurrer, the Court considers the relief requested as accurately stated in Counts I and II of the Bill of Complaint and not what counsel said at oral arguments.

SPR relies primarily on *County School Board*. In that case, a county sought to set up the statutes as a defense to a rule issued to its board of supervisors to show cause why it should not be compelled to furnish the funds necessary to meet payment promised for the purchase of a lot for the erection of a school. The Supreme court held that it was "not dealing with a claim against the county but with an effort to make the Board of Supervisors live up to its agreement." 184 Va. at 710. The board of supervisors had agreed to provide the funds for the school board to purchase the lot for a school site, but when a deed was tendered for the lot, the board of supervisors failed to furnish the funds.

At first glance, it may seem hard to understand the holding in *County School Board* when all the board of supervisors had to do in that case in order to live up to its agreement was to pay money. A "claim or demand" under Virginia Code Section 15.1-554 clearly means a claim or demand for a county to pay someone some money. However, an examination of the cases in which the Virginia Supreme Court has held that the procedural requirements of the statutes is a prerequisite to maintaining a suit against a county for a monetary claim reveals in each

case an unliquidated claim not based upon a pre-existing agreement to pay a specific amount as in *County School Board*. *See, e.g., Botetourt County v. Burger*, 86 Va. 530, 10 S.E. 264 (1889) (counterclaim against county for debt owed by county); *Fidelity and Deposit Co. v. Gill*, 116 Va. 86, 81 S.E. 39 (1914) (claim for monetary recovery on surety bond); *Nelson County v. Coleman*, 126 Va. 275, 101 S.E. 413 (1919) (claim for damages for wrongful taking of land); *Parker v. Prince William County*, 198 Va. 231, 93 S.E.2d 136 (1956) (claim for damages caused by nuisance); *Chesterfield v. Town and Country Apts.*, 214 Va. 587, 203 S.E.2d 117 (1974) (claim for recovery of sewer connection fees paid under protest); *Burk v. Porter*, 222 Va. 795, 284 S.E.2d 602 (1981) (suit to recover county funds improperly disbursed).

Under Virginia Code § 15.1-506, the Board may "be sued in relation to all matters connected with their duties as such board . . . ." Assuming that the contract and lease are valid agreements binding upon the County, the Board would have the duty to comply with them.

Count I of the Bill of Complaint seeks specific performance of the contract and lease. Count II thereof seeks a declaratory judgment concerning specific rights of the parties under the contract and lease. Neither count, under the analysis set forth above, is a monetary claim requiring compliance with the statutes as a prerequisite to a suit. The Demurrer is, therefore, overruled for the foregoing reasons as to the first ground.

SPR also asserts that the statutes do not apply because the County waived the statutory requirements and/or is estopped to assert them. From the allegations of the Bill of Complaint and the argument of counsel, it appears that SPR's contention is that the County, by its actions in negotiating the contract and lease and by the terms of the agreements themselves, induced SPR to act upon a reasonable belief that the County had waived or will waive the statutory requirements. The statutory requirements are not addressed in either the contract or the lease. There are no allegations of specific facts to support SPR's waiver or estoppel argument, and no facts can be inferred from the facts specifically alleged to support such argument. The mere failure to mention the statutory requirements in the agreements does not in or of itself

amount to a waiver of and an estoppel to assert the requirements. The Demurrer would not be overruled on the basis of the waiver and estoppel argument.

2. *SPR has an adequate remedy at law by notice and demand for action from the Board which is not alleged to have been done*

This ground is but another way of asserting that the statutory requirements are a necessary prerequisite to this suit. For the same reasons set forth as to the first ground of the Demurrer, it is also overruled on the second ground.

Let Mr. O'Connell prepare a decree overruling the Demurrer and directing the County to file its answer on or before October 12, 1990.

December 13, 1990

After hearing the argument of counsel on December 10, 1990, the Court took under advisement the Motion for Summary Judgment of the County of Fauquier based upon the "liquidated damages" provisions of the Contract dated June 23, 1989 (Exhibit 1 to the Bill of Complaint) and the Deed of Lease of the same date (Exhibit E to Exhibit 1 of the Bill of Complaint). The Court has also considered the memoranda filed by counsel.

The Motion for Summary Judgment is denied.

The Motion must be considered in light of the relief requested by SPR Corporation and the defenses asserted by the County of Fauquier. SPR requests specific performance of the provisions of the Contract and the Lease requiring the County to appropriate a certain sum and obtain the right of way from the Warrenton Volunteer Rescue Squad; and it further requests a declaratory judgment that SPR has the right to receive rental payments whether or not the County has provided the aforesaid right of way. Besides denying certain of the facts alleged in the Bill of Complaint, the County has asserted four affirmative defenses. (See the Answer filed October 12, 1990). The County has not asserted as an affirmative defense to the relief requested by SPR that under the Contract and the Lease,

the only relief available to SPR is liquidated damages for a breach of the agreements by the County.

I do not agree with SPR that such an affirmative defense as a ground for summary judgment comes too late if the "liquidated damages" provisions of the Contract and the Lease clearly provide a sole remedy for a breach and a measurement of damages for such a breach. A motion for summary judgment should be granted at any time it appears that under the requirements of Rule 2:21 a party is entitled to a judgment. It makes no difference that the party has never before raised the issue in the case.

Both provisions cited by the County in support of its Motion for Summary Judgment place contractual obligations on the County which must be performed before it can take advantage of the "in lieu of other . . . remedies" provisions. Because each of the two cited provisions are not exactly the same, each provision must be interpreted according to its own words.

Paragraph 13 of the Contract states as follows:

> If at any time the County, by a proper vote or by nonpayment of any lease installment, indicates its intent not to proceed with its obligations under this Agreement, the County *will pay* to SPR as liquidated damages an amount equivalent to one year's rent (which amount will be appropriated yearly pursuant to the terms of paragraph 11 herein). *Said liquidated damages shall be in lieu of any other legal or equitable remedies SPR may have upon default.*

(Emphasis mine.)

Paragraph 13 does not provide for a measurement of damages if the County breaches the Contract. It provides that if several certain events happen (e.g., the County by nonpayment indicates its intent not to proceed with its obligations under the Contract), then the County will pay SPR a specific sum. The County's obligation to pay the specific sum only arises if the County has obligations under the Contract. In this case, the County has taken the position that it has no obligations under the Contract. There are still material facts genuinely in dispute as to obligations of the County under the Contract. Further,

the last sentence of paragraph 13 means that if the County pays the specific sum to SPR, then SPR has no other remedies available to it.

Paragraph 7 of the Lease states as follows:

> If at any time during the term of this lease, the County refuses or fails to pay any monthly installments when due, or otherwise defaults, then upon thirty days' written notice to the County Administrator, the one year's additional rent *shall be paid over* to SPR as liquidated damages. The thirty day period shall begin to run upon receipt of notice by the chairman of the Board of Supervisors. If the County's default is not cured within the thirty day period, then the additional one year's rent shall be paid over to SPR forthwith and without any other authority or evidence except the County being provided with a copy of the thirty day notice to the then County Administrator and an affidavit executed by SPR that the default was not cured with the thirty day period. *This payment shall be in lieu of any other legal or equitable remedies SPR may have upon default. The same mechanism for payment of these liquidated damages shall apply to a default by the County during the construction period.*

(Emphasis mine.)

The last sentence of paragraph 7 makes it even clearer that the *payment* of the specific amount by the County to SPR will be in lieu of any other remedy available to SPR. Further, the County takes the position that it is not obligated under the Lease, and there are material facts genuinely in dispute as to that issue.

I express no opinion at this time as to the argument set forth in Section IV of SPR's memorandum in opposition to the County's Motion for Summary Judgment.

Under paragraph 11 of the Contract, it is clear that the County agreed to appropriate an amount equal to one year's rent "to be disbursed pursuant to the terms contained in Paragraph 13" as an inducement to SPR "to incur this risk and to undertake construction." Under

16

paragraph 7 of the Lease, the County agreed to make the same appropriation. SPR seeks a court order directing the County to make the appropriation. The County asserts that either it has or it has no obligation to do so. Under any fair interpretation of both agreements, the County cannot seek to take advantage of a "liquidated damage" provision unless it has performed on its part an essential prerequisite to making the funds available for payment to SPR. The two paragraphs relied upon by the County must be read as part of the whole agreement in which each is contained. If each agreement is read as a whole, then it is readily apparent that the "liquidated damages" provisions do more than merely provide a measure of damages. The provision for the appropriation of the funds to pay the "liquidated damages" was bargained for just as much as the "in lieu of other . . . remedies" provision. The County cannot take advantage of one without complying with the other. They provide for an obligation on the part of the County to have the funds appropriated for any required payment to SPR, and there are material facts genuinely in dispute on this issue.

February 19, 1991

This will acknowledge receipt of Mr. Finnegan's letter of February 8, 1991, and Ms. LeFon's letter of February 11, 1991 (copy enclosed for Mr. Finnegan). The defendant's Motion to Strike Expert Witness Testimony or, in the alternative, to Reopen Evidence to Examine Steven L. Biegel on his Qualifications was filed February 11, 1991.

Because of the nature and the complexity of the issues involved in this case which are already under advisement, the Court will also take under advisement the issue of whether or not the motion will be entertained by the Court.

March 15, 1991

Evidence was heard by the Court in this cause *ore tenus* on January 18, 1991, January 22, 1991, and January 23, 1991. Afterwards, counsel filed memoranda in lieu of final argument. The last of such memoranda was filed on February 8, 1991. Also, on February 11, 1991, the County

of Fauquier filed a Motion to Strike Expert Testimony or, in the alternative, to Reopen Evidence to Examine Steven L. Biegel on his Qualifications (the "Biegel Motion"). The court took under advisement whether or not the Biegel Motion would be entertained by opinion letter dated February 19, 1991. After reading and considering the memoranda, the many cases and other authorities cited by counsel and the Court's own independent research, and for the reasons hereinafter set forth, the relief requested by the complainant, SPR Corporation ("SPR"), is denied and there is no need for the Court to entertain the Biegel Motion.

SPR is requesting in Count I of its Bill of Complaint an order of this Court requiring:

(A) that the County forthwith perform the obligations set forth in a contract between SPR and the County dated June 23, 1989 (the "Contract"; plaintiff's Exhibit No. 1) requiring the County to appropriate and amend its budget to the extent that the County will actually obtain, set aside and designate in the general fund the sum of $855,665.52;

(B) that the County obtain forthwith the right of way from the Warrenton Volunteer Rescue Squad (the "Rescue Squad" and the "Rescue Squad right of way"), and if the Rescue Squad refuses, then the County be ordered to obtain the Rescue Squad right of way by condemnation; and

(C) that the County comply with the payment terms of the Lease between SPR and the County dated June 23, 1989 (the "Lease") (Exhibit E to plaintiff's Exhibit No. 1) by ordering the County to pay $71,305.46 plus $10,695.82 for each and every month beginning September 1, 1990, that the County is in default under the Lease.

Additionally, SPR requests in Count II of its Bill of Complaint an order of this Court declaring that it is entitled to receive rental payments under the Lease whether or not the County has provided the Rescue Squad right of way.

Even though SPR is seeking a declaratory judgment in Count II, this suit is one for specific performance of the contract. The evidence relevant and material to the declaratory judgment count is likewise relevant and material to the specific performance count. The subject matter and the parties are the same in each count. The

declaratory judgment issue is one which the Court must consider in deciding the issue of specific performance. For these reasons, this cause is considered by the Court as one for specific performance. *See, Granva Corporation v. Heyder*, 205 Va. 660, 665 (1964).

Specific performance is not a matter of right but rests in the sound discretion of the Court. *Dominick v. Vassar*, 235 Va. 295, 300 (1988); *Haythe v. May*, 223 Va. 359, 361 (1982); *See* 17 M.J., *Specific Performance*, Section 4. However, such discretion is not an arbitrary or capricious one but one which is controlled by the established doctrines and settled principles of equity. *Pair v. Rook*, 195 Va. 196, 204 (1953); 17 M.J., *Specific Performance*, Section 4. Further, such discretion must be governed by the peculiar circumstances of each particular case. *Cushman v. Fitzhugh*, 199 Va. 234, 240 (1957).

*Issues*

### I. *Validity of the Contract*

A. Should the Court entertain the issue of the validity of the Contract even though it was not pleaded by the County as an affirmative defense?

B. Did the Chairman of the Board of Supervisors have the authority to execute the Contract?

1. Did the Board resolution of March 1, 1988, grant the Chairman proper authority?

2. Can the Court accept evidence to explain, contradict or impeach the resolution of March 1, 1988?

3. If the Chairman did not have authority under the March 1, 1988, resolution, then was the Contract ratified by subsequent actions of the Board?

C. Does the Contract violate the Public Procurement Act?

1. Does it violate the competition requirements of the Act?

2. Is the Contract an illegal design-build contract?

3. If the Contract violates the act, then is it void or voidable?

4. If the Contract is voidable, then can it be ratified?

D. What is the extent of the knowledge chargeable to a person contracting with a County?

## II. *If the Contract is Valid and Enforceable*:

A. Is the only condition precedent to payment of rent by the County the issuance of a certificate of occupancy?
1. Was a valid certificate of occupancy issued?
2. Is the certificate of occupancy presumptively valid because it is an administrative agency decision?
B. As to the Rescue Squad right of way,
1. Is the County obligated to convey the right of way or is its performance excused by the acts of a third party?
2. Does the County have the authority to condemn the right of way?
3. Was the County's obligation solely to prepare the easement documents?
4. Did the actions of SPR prevent the County from obtaining the right of way?
C. Does the County have a right to inspect as a condition precedent to payment of rent or commencement of the lease?
D. Does the County have the right to be satisfied unilaterally with the inspection as a condition precedent to payment of rent or commencement of the lease?
E. Has the building been constructed according to the plans and specifications set forth in the Contract?
F. Does the Lease commence only after both the building and site work are complete?
G. Has the County received the consideration for which it bargained?

## III. *Should the court in its discretion grant specific performance of the contract?*

Issue III is the dispositive issue in this case. After consideration of all the issues in the case, this Court sitting as a court of equity will not in its discretion order specific performance of the Contract as requested by SPR in its Bill of Complaint.

*I. The court will entertain the issue of the validity of the contract even though the county did not plead invalidity as an affirmative defense.*

Whether or not the County raised the issue of the illegality of the Contract in its pleadings is immaterial because the illegality or invalidity may be disclosed for the first time by the evidence. If such an illegality or invalidity is disclosed, then a court of equity will not enforce the contract even though that defense was not raised in the pleadings. *Camp v. Bruce*, 96 Va. 521, 524 (1898). Although *Camp* concerned a contract unlawful under common law principles, I do not read the opinion of the Supreme Court of Appeals to require a different result if a contract were illegal or invalid under a statute. *Camp* placed its emphasis on the contract being "illegal because opposed to public policy." 96 Va. at 524. Not only because of the reasoning in *Camp*, but also because the burden is upon SPR to prove a valid, legal and enforceable contract, this Court will entertain the issue of invalidity raised by the County. Illegality or invalidity of a contract is a factor or circumstance this Court may consider in deciding whether to grant the discretionary relief of specific performance. *See* 4B M.J., *Contracts*, Sections 125-131; 17 M.J., *Specific Performance*, Section 10.

*II. The contract is not invalid for lack of authority on the part of the chairman of the board to execute it on June 23, 1989.*

The actions of a public body are shown by its recorded acts. *Page v. Belvin*, 88 Va. 985, 991 (1892); *Bunch's Executor v. Fluvanna County*, 86 Va. 452, 455 (1890). The voting requirements for the Board are set forth in Section 15.1-540, and the requirements for a record of complete minutes of meetings and proceedings of the Board are set forth in § 15.1-543. The minutes, therefore, reflect and identify the matter voted upon by the Board.

The testimony of the members of the Board cannot be received to impeach their recorded acts. *Page* at 991; *Bunch's Executor* at 455. For this reason, the Court will not allow into evidence the tape of the Board meeting

of March 1, 1988, offered by the County on January 23, 1991, as defendant's Exhibit No. 31.

Standing alone, the following resolution adopted by the Board on March 1, 1988, would not be sufficient authority for James R. Green, Chairman of the Board, to enter into the Contract.

### Social Services Office Space

Ms. Herbert moved to authorize a commitment with Castleton Construction Company for a lease-purchase agreement for the Department of Social Services office space subject to approval of the Chairman. Mr. Rankin seconded, and the vote for the motion was unanimous.

The resolution refers to Castleton Construction Company. The Contract is with SPR, not Castleton. The resolution refers to "office space," not "a building and site" (paragraph 2 of the Contract) or 5.6951 acres with "a 41,000 square foot office building and certain other improvements" (Paragraph 1 of the Lease).

However, the Board subsequent to March 1, 1988, took certain actions, all of which are reflected in its minutes, that evidence its knowledge of and ratification of the Contract, as follows.

1. The minutes of the June 19, 1990, meeting show the following:

The Supervisors authorized $500,000 be added to the base price for financing the finishing of the Human Services Building and that the School Board be authorized to occupy all of the fourth floor and part of the third floor. Ms. Herbert then moved to adopt the following resolution. Mr. Burton seconded, and the vote for the motion was unanimous.

2. The same minutes reflect the budget adopted by the Board for FY 1991 (July 1, 1990-June 30, 1991). In the "Expenditures" portion of the Budget, the following items are shown:

IV. Human Services Building
    Rent Reserve                           $835,000

V. Capital Projects Fund
    Human Services Building      $7,000,000

In the "Revenues" portion of the budget, the following are shown:

H. Cash Assets
    Cash Reserve                    $1,951,587*
    Lease Purchase               $7,000,000
  * Includes:      $835,000 for reserve if lease on human services building is not renewed.

3. The minutes of the August 21, 1990, meeting show that the Board by a 3 to 2 vote adopted the following resolution:

> Steve Crosby left employment with the County to take a position in the private sector in March, 1990, having served Fauquier County well as County Administrator for more than eleven and one-half years.
> This Board was fully informed of his intention to associate with the SPR Corporation as soon as that became his plan. *This Board also entered into its agreement with SPR Corporation for lease-purchase of the Human Services Building with full understanding of the facts.*
> Mr. Crosby always has been careful to act with the best interests of the County in mind, and we find that the suggestion of conflict of interest in the SPR transaction on his part is most regrettable because we find that his actions have been beyond reproach.

(Emphasis mine.)
    The emphasized language clearly shows that the Board recognized on August 21, 1990, that it had entered into an agreement with SPR for the lease-purchase of the building. At that time, every member of the Board knew that

SPR had been constructing the building pursuant to an agreement with the County. Ms. Herbert's testimony that as of June, 1990, she did not know that the County had entered into an agreement with SPR for construction of the building is incredible. It is not noted in the minutes why Mr. Green and Ms. Herbert voted against the resolution, and the minutes of the August 21, 1990, meeting were unanimously approved at the September 4, 1990, meeting.

At no time did the Board by recorded act repudiate the actions of Mr. Green on June 23, 1989, or indicate in any way that it deemed that the Contract with SPR was invalid because Mr. Green had exceeded his authority. The subsequent actions of the Board outlined above show that the Board ratified the Contract. A board can be bound by an agreement by ratification even if no resolution were ever passed, *Campbell County v. Howard*, 133 Va. 19 (1922), or even if the agent of the Board had questionable authority to enter into the agreement, *Holstein Corp. v. Wise County*, 131 Va. 142 (1921).

A county can employ an agent to do what it has the authority to do. *South Hampton Apartments v. Elizabeth City Counsel*, 185 Va. 67 (1946); 5A M.J., *Counties*, Section 34. Assuming that the Contract was one which the County had the power to enter into, if Mr. Green exceeded his authority under the resolution in entering into the Contract, then his actions are voidable only. The Board never took action to avoid the Contract until it raised the issue after the pleading stage of the case. It comes too late. The Board is estopped to deny the authority of Mr. Green.

III. *The contract violates the spirit and policies of the Virginia Public Procurement Act but does not technically violate the Act.*

Although the agreement between the County and SPR may not technically violate the substantive provisions of the Virginia Public Procurement Act (Sections 11-35 *et seq.*) (the "Act"), I am of the opinion that it violates the spirit and the public policies of the Act.

The Contract by its terms is an agreement whereby SPR agreed to build on land owned by SPR an office building and certain other improvements according to a site plan

and plans and specifications made a part of the Contract, and at some specific point in time, the County would lease the property for thirty years at a fixed rent subject to certain adjustments with an option to the County to purchase the property at a price determined by a formula in the Contract. In order to comply with the constitutional and statutory county debt limitations, the Contract does not obligate the County to make rental payments by means of a "non-appropriation clause" in the form of a provision for "liquidated damages." *See* paragraphs 11 and 13 of the Contract and paragraphs 4 and 7 of the Lease.

The monthly rental payments are based on a fixed price amortized over a thirty-year period subject to certain adjustments. The Contract and Lease merely provide that the County will pay rent. It does not have a breakdown of or require the County to pay separately for the contracting or professional services required for completion of the property to be leased by the County. The construction aspect is just as important as any other aspect of the Contract. The project was done by SPR solely for the benefit of the County. It can at least be reasonably inferred that SPR would not have done the project without having what its principals believed was an agreement with the County.

If the Contract went as SPR expected, then the County would have obtained construction services and professional services from non-governmental sources. The County would benefit (by having offices for the Department of Social Services and other County departments) from construction services from SPR and its subcontractors, and professional services such as architectural, engineering and surveying services from firms hired and paid by SPR, not the County. The County would secure the benefit of these services by merely paying rent.

The public policies of the Act are set forth in Section 11-35(G). The legislature intended that counties secure certain services, such as construction, § 11-41(A), and professional services, § 11-41(B), at high quality and at reasonable cost by fair and impartial competition among qualified vendors. Here the County acquired the benefit of such services without going through the competitive bidding or negotiation requirements of the Act. If the County had sought to construct the project on land owned

by the County, then clearly all related construction and professional services could only have been procured by following the Act.

The agreement on December 5, 1988, between the County and SPR obligated the County upon certain conditions beyond its control to pay for professional services, e.g., architectural, engineering, surveying and legal fees. This agreement was entered into without compliance with the Act. The County never paid any sums under this agreement, but SPR was able to accomplish the preliminary development plan contemplated by this agreement. *See* paragraph 4 of the Contract.

If the Hospital Hill site was so important to the Board, why did it not negotiate and buy the land, as it could under § 15.1-262, or condemn it if necessary, and construct the building and other improvements following the requirements of the Act? Taking the course it did, the Board effectively denied other qualified vendors access to public business. Also, the Board could possibly be paying more under the Contract for the same benefit than if the Act had been followed.

On the other hand, SPR may very well have an argument that the County under § 15.1-262 simply exercised "the power to acquire . . . by lease . . . any real property . . . for any public purposes." Under the Contract and the Lease, the County acquires real property by a lease. Section 15.1-262 does not specify improved or unimproved real property or land with improvements to be constructed thereon (which is real property). Because the County in the ultimate analysis is merely acquiring real property by lease and not procuring construction and professional services, I cannot find that the Act has been technically violated, although I am of the opinion that the spirit and policies of the Act have been violated. It is a matter that the legislature may want to consider for possible curative action.

The Contract is not a "design-build contract" as defined in § 11-37 because at the time the Contract was entered into, the building and project had already been designed. The Contract requires the project to be built according to certain plans and specifications made a part of the Contract. The § 11-37 definition of "design-build contract" is a contract "in which the party contracting

with the public body *agrees to* both design and build"
the project. The definition contemplates a contract for
designing and building to take place in the future. Under
the Contract, the designing had already been done.

Having found that the Act has not been technically
violated, there is no need for the Court to consider whether
the Contract is void or voidable.

Because of the Court's reasoning set forth in IV
below, there is no need for the Court to consider the
issues set forth in I(D) and II of the attachment hereto.
This case is decided on issues concerning validity or
invalidity of the Contract and specific performance; there-
fore, there is no need for the Court to consider the issues
listed in II of the attachment concerning performance
of the Contract.

IV. *Even assuming the contract to be valid, the court
in the exercise of its discretion will not grant specific
performance.*

Each reason for not granting specific performance
is addressed below.

A. *The Contract and Lease violate the spirit and
the policies of the Virginia Public Procurement Act even
though it may be a valid lease of real property*

Contracts growing out of illegal acts or contracts
contrary to positive law or public policy cannot be en-
forced. 4B M.J., *Contracts*, §§ 124-125; 17 M.J., *Specific
Performance*, § 10. *See also*, the *American-LaFrance v. Arl-
ington County* cases, 164 Va. 1 (1935) and 169 Va. 1 (1937);
*Colbert v. Ashland Construction Co.*, 176 Va. 500, 509-510
(1940). Although the acts of the Board in this case may
not be technically illegal or contrary to public policy
so as to make the Contract void, this Court can certainly
consider the actions of the parties in deciding whether
or not to grant specific performance. *See* 71 Am. Jur. 2d,
*Specific Performance*, § 45.

SPR gained a decided advantage over other potential
vendors of office space to the County by its negotiations
with the County which led ultimately to the Contract and
the construction of the project. With the County's involve-

ment and the potential threat of condemnation (see defendant's Exhibit No. 9), SPR was able to acquire the land at a lower price. The County lacked bids from other qualified contractors with which to compare the cost under the Contract with SPR. Professionals were allowed to perform work benefiting the County without the County having bids on similar work from other qualified professionals for cost comparison purposes. SPR has the advantage of having entered into an agreement read for the first time by Mr. Green on the day he signed it, not seen by any other Board member before it was signed, and later, when problems occurred, the Board had to deal with the execution of the Contract as an accomplished fact. The members of the Board would by human nature be less inclined to disapprove the Contract after Mr. Green had already signed it than before he had signed it.

It is also of importance to this Court that the building and other improvements were not in existence at the time the Contract was signed. If they were in existence, then the County would simply be leasing real property which it can do without having to comply with the Act.

SPR argues that the lease commences when the Certificate of Occupancy is issued. *See* paragraph 16 of the Contract and paragraph 3 of the Lease. But paragraph 8 of the Contract indicates that the lease "term will begin upon completion of the building and site work." The site work is not complete, and SPR had to enter into an agreement with the Town of Warrenton (the "Town") (Defendant's Exhibit No. 5) in August, 1990, to continue its preliminary site plan approval provided SPR completed certain items as a condition to final site plan approval. It is, therefore, at least arguable that the lease term has not even yet commenced solely as a result of the failure of SPR to complete certain items.

B. *The "Liquidated Damage" Provisions of the Contract and the Lease Preclude Specific Performance of the Contract*

The provisions of the Contract and the Lease providing for "liquidated damages" are set out in the opinion letter of December 13, 1990. Although the provisions are not exactly the same, both clearly provide that the payment

of a sum certain by the County will be in lieu of other legal and equitable remedies that SPR may have upon default. Furthermore, both parties to the Contract and the Lease knew full well that the present or subsequent Board may decide not to continue with the lease from one fiscal year to the next or merely decide not to proceed with its obligations under the agreements. Hence, the insertions of the aforesaid provisions in the agreements. The provisions also provided a means by which the County could avoid the constitutional and statutory debt limitations. SPR was fully aware that the lease could be cancelled at any time by the Board, and all the County would be obligated to pay would be the specified sum as "liquidated damages." The same would apply if the County defaulted during the construction period.

Although there are few reported cases, Virginia appears to follow the general rule of most jurisdictions that if the parties intended that a party could substitute performance of a contract by the payment of a liquidated sum, then specific performance is not available. 81 C.J.S., *Specific Performance*, § 60; 71 Am. Jur. 2d, *Specific Performance*, §§ 57-59; 17 M.J., *Specific Performance*, § 38; *Brown v. Friedberg*, 127 Va. 1, 3 (1920); *Love v. Braxton*, 9 Va. (5 Call) 537 (1805). On the other hand, if the payment of a specific sum is only intended to be security for the performance of the contract, then specific performance may be decreed. *See Brown* at 4.

Here the liquidated damages provisions were inserted not as a penalty to secure the performance of the Contract by the County but as a mechanism by which SPR could be assured the payment of an amount satisfactory to it to compensate it in the event that the Board decided for any reason not to continue with the lease. The provision compensates SPR for the risk in leasing to the County under circumstances which would not allow the County to be committed and bound to a long-term lease. As the commencement of each fiscal year approaches, the Board will be presented with two alternatives--continue to pay the rent or pay the "liquidated damages." Moreover, the County could discontinue the lease at any time by merely paying "liquidated damages."

If this Court were to grant specific performance in this case, then SPR could receive more in payments

from the County than it is entitled to under the "liquidated damage provisions." If the Court were to find that the County defaulted as of September 1, 1990, and ordered the County to pay the rental payments from that date as well as the "liquidated damages," then SPR would be receiving more than the parties intended, i.e. "liquidated damages" only, for a breach by the County. SPR has another adequate remedy for breach of the Contract, an action at law to recover the "liquidated damages."

C. *The Inconsistent, Inartistically Drafted, and Incomplete Provisions of the Contract*

The inconsistency of the provisions concerning when the lease is to commence have been mentioned above. Also, the second full paragraph of the Lease says that the lease commenced "July 1, 1990," without any alternate commencement date or event. Paragraph 7 of the Lease refers to a Contract dated "June 22, 1989." The inconsistencies of the "liquidated damages" provisions in the Contract and the Lease have been discussed previously.

The provisions of the plans and specifications (2 volumes, Exhibit D, to plaintiff's Exhibit No. 1) are merely form documents not tailored to meet the actual circumstances and relationship of the parties to this transaction. Although the Contract in paragraph 6 recites that SPR had obtained site plan approval from the Town, SPR had not obtained such approval when the Contract was signed on June 23, 1989, and the site plan attached to the Contract (Exhibit C to plaintiff's Exhibit No. 1) was not the site plan subsequently approved by the Town (Defendant's Exhibit No. 10) on July 18, 1989.

Certainly, the parties knew on June 23, 1989, that the County did not have the ability to convey a right of way over the Rescue Squad property. It did not own the underlying fee. This was obvious from the site plan. The provision in paragraph 18 of the Contract that "the County will convey to SPR" a right of way over the Rescue Squad property was an impossibility. Simply saying that the County could condemn the right of way is not an answer because to do so the County would be condemning for a private use (an easement appurtenant to land privately owned by SPR) which is impermissible under the condemnation

statutes. The provision could have been more completely drawn to satisfy the needs and the actual intentions of both parties.

   D. *The Manner in which the Whole Transaction was Negotiated and handled by both the County and SPR*

   Despite the size of this project and the very large financial commitment by the County for it, there is very little in the Board's minutes about it. The project was discussed extensively by the Board, but there is very little in its minutes about it. For example, the Board voted to approve extras, selected one of several sketches of a design of the building, determined the needs of the Department of Social Services, decided it would be more cost effective to build a four-story building with the two top floors unfinished, and had work sessions on the land acquisition and building design, yet no mention is made of such matters in the Board's minutes.

   Mr. Green executed the Contract because he wanted "to carry out the wishes of the Board," while he acknowledged that the only formal authority for his actions was the resolution of March 1, 1988, the deficiencies of which have been discussed above. Mr. Green testified that the Board would informally vote on matters during work sessions. He said that a member would bring up a matter, and he would just poll the Board.

   However, the Board may have conducted business in the past or during this transaction, it is not enough merely to act in good faith without appropriate documentation and hope that all parties will act as gentlemen and live up to and abide by their agreements.

   On the other hand, SPR cannot expect to have the benefit of whatever it might have been able to negotiate with the County. Those persons who deal with public officials must, at their peril, take cognizance of their power and its limits. *Wiecking v. Allied Medical Supply*, 239 Va. 548, 553 (1990); *County of York v. King's Villa, Inc.*, 226 Va. 447, 450 (1983); *Deal v. Commonwealth*, 224 Va. 618, 623 (1983); *South Hampton Apartments v. Elizabeth City County*, 185 Va. 67, 78 (1946); *American-LaFrance v. Arlington County*, 169 Va. 1 (1937); *Bunch's Executors v. Fluvanna County*, 86 Va. 452, 457 (1890). SPR, as well as the County,

was represented by counsel during all steps of this transaction. Merely dealing in good faith is not always enough when dealing with a public body.

It is also not a situation where SPR has done everything in good faith, and it is now being held up by the arbitrary and capricious actions of the Board. SPR submitted and secured approval from the Town of a site plan showing improvements on land now owned by SPR without getting the owners thereof (being the County and the Rescue Squad) to join in the site plan. SPR was less than amicable in its dealings with the Rescue Squad during the construction process even though SPR knew it needed the Rescue Squad's cooperation. During the construction of the building, SPR made certain changes (e.g., in the duct work, elimination of sprinklers, and change in the type of heating system) without prior approval from the County. Granted, the Contract did not require approval by the County, but SPR could very easily have at least advised the County of the changes. Likewise, when the County wanted to inspect the building, SPR denied the County access citing that there was no provision in the Contract or the Lease providing for such an inspection. A logical inference is that SPR did not want the County to discover the things it ultimately discovered after the suit was filed and that it would be more cost effective for SPR to deal with any problems under the one-year "limited warranty" of paragraph 13 of the Lease. Finally, SPR had to have recognized that the political climate could change even during the construction period because under paragraph 7 of the Lease, the "liquidated damages" payment mechanism would "apply to a default by the County during the construction period."

### V. *The Biegel Motion*

There is no need for the Court to rule on the Biegel Motion because the testimony of Mr. Biegel had no bearing on any of the issues which the Court deems to be dispositive in this case.

### VI. *Decree*

Let Mr. Finnegan prepare a decree consistent herewith to which either counsel may note his exception. For purposes

of the decree, the Court denies the motion to strike made by the County at the conclusion of SPR's case and decides the case based on evidence presented by both sides. Let the decree specifically recite that this Court sitting as a court of equity does not find the Contract to be illegal or invalid but merely declines in its discretion for the reasons stated herein to grant specific performance. SPR's remedy, if any, is in a court of law, not in a court of equity.

## April 18, 1991

When counsel appeared on April 11, 1991, to present argument on the final decree, I told Mr. O'Connell that I would read and consider his Memorandum in support of Complainant's Motion to Reconsider Application of Factual Findings and to Grant Specific Performance and Complainant's Motion to Implement Findings of Fact before I decided whether or not to consider the Motions.

After reading and considering both the Motions and the Memorandum, both motions are denied. There is no need for further argument from counsel.

The Motion to Reconsider Application of Factual Findings and to Grant Specific Performance ("Motion to Reconsider") is considered as a general request for the Court to reconsider its ruling in the opinion letter of March 15, 1991. The Motion to Implement Findings of Fact ("Motion to Implement") is a request for a decree requiring the County to convey to SPR that portion of the Rescue Squad right of way which traverses County-owned land.

SPR's argument as set forth in its Memorandum addressed the four reasons given by the Court in the March 15, 1991, opinion letter for declining to grant specific performance. As a general observation, I was, and am, well aware that no one has found a case similar to this one. Counsel did not cite such a case, and I could not find one. Also, I must emphasize that I never intended for any of the reasons given in the March 15, 1991, opinion letter to be absolute legally required reasons for denying specific performance. The reasons were merely a series of factors, which when added together, caused me to exercise my discretion in favor of denying specific performance.

I certainly concede that there are no cases dealing with a violation of the spirit and the policies of the Virginia Public Procurement Act, but, again, this reason is merely a factor in the exercise of the Court's discretion.

I do not agree with SPR's argument that the one year's rent is merely security for the payment of rent and the other matters defined as a default. The sentence cited by SPR in paragraph 7 of the Lease refers to a guarantee of "the performance of this Deed of Lease by the County." The sentence concerns the performance of all of the Lease, not just the payment of rent. Further, it does not refer to the obligations under the Contract, but only under the Lease.

A complete reading of both the Contract and the Lease leads me to conclude that the parties intended that if the County defaulted, then SPR's damages would be limited to one year's rent. The parties intended that if the County decided not to rent the building, then SPR would only be entitled to one year's rent as liquidated damages. Granting the specific performance requested by SPR would have the effect of giving SPR more than it would be entitled to under the agreements if the County decided not to rent the building. For whatever might be the reason, the County has elected not to occupy the building and commence paying rent. In such a situation, I am of the opinion that the parties contracted for liquidated damages of one year's rent.

I do not agree that the County lost the protection of the liquidated damage provisions by not paying the one year's rent when it was demanded by SPR. The County is certainly entitled to maintain a position that the agreements are invalid and unenforceable. In this specific performance suit, this Court has merely decided that the agreements are not invalid for the reasons mentioned in the opinion letter of March 15, 1991. There has not been a final and binding determination of the validity of the Contract and the Lease.

Certainly, a county can condemn for a right of way under § 15.1-238(A), but the taking must be for public use. The lack of a public purpose does not lie in the use to be made of the right of way, but in the fact that the right of way would be appurtenant to and for the benefit

of privately owned land, i.e., the land of SPR. Paragraph 18 of the Contract requires the County to convey the Rescue Squad right of way to SPR. It does not require that the County merely obtain a right of way or assure a right of way or acquire a right of way for the benefit of other County-owned land (the Health Department land) or land owned by the Rescue Squad.

The Motion to Implement asks the Court for relief beyond that requested in the Bill of Complaint. Count I thereof asks the Court to order the County "to obtain forthwith the right of way from the Rescue Squad . . . ." This request clearly concerns land owned by the Rescue Squad. It does not concern a right of way over County-owned land. While it is arguable that Paragraph 18 of the Contract refers to a right of way over County-owned land, SPR did not request specific performance as to such a right of way. SPR was very specific in the nature of the relief requested. It must be bound by its own specificity. Its requests for relief cannot be expanded or enlarged after trial.

Anything contained in the opinion letter of December 13, 1990, that may be inconsistent with the opinion letter of March 15, 1991, is overruled by the latter opinion letter. The opinion letter of March 15, 1991, prevails even though I do not feel that the two opinion letters are inconsistent.

The Motion to Reconsider also asks the Court to consider evidence not presented at trial.

Let Mr. Finnegan prepare a decree denying the Motions to which Mr. O'Connell may note his exception.